## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GENE NIKSICH, Individually and On Behalf of All Others Similarly Situated, )<br>)<br>)<br>) | **Case No.  1:15-cv-04860-PGG** |
| ) | **CLASS ACTION** |
| Plaintiff, )<br>)<br>) | |
| v. )<br>) | |
| ICONIX BRAND GROUP, INC., NEIL COLE, WARREN CLAMEN, and JEFF LUPINACCI, )<br>)<br>)<br>) | |
| Defendants. )<br>) | |

| | |
|---|---|
| LORENZO LAZARO, Individually and On Behalf of All Others Similarly Situated, )<br>)<br>)<br>) | **Case No.  1:15-cv-04981-PGG** |
| ) | **CLASS ACTION** |
| Plaintiff, )<br>)<br>) | |
| v. )<br>) | |
| ICONIX BRAND GROUP, INC., NEIL COLE, WARREN CLAMEN, and JEFF LUPINACCI, )<br>)<br>)<br>) | |
| Defendants. )<br>) | |

*- caption continued on next page -*

HAVERHILL RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated,

                    Plaintiff,

v.

ICONIX BRAND GROUP, INC., NEIL COLE, WARREN CLAMEN, JEFF LUPINACCI, and DAVID BLUMBERG

                    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

**Case No. 1:15-cv-06658**

**<u>CLASS ACTION</u>**

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION BY
LA AMUNDSON QUALIFIED ANNUITY TRUST
FOR CONSOLIDATION OF RELATED ACTIONS,
<u>APPOINTMENT AS LEAD PLAINTIFF. AND APPROVAL OF COUNSEL</u>**

TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ........................................................................1

II.     STATEMENT OF FACTS ...............................................................................1

III.    ARGUMENT ...................................................................................................4

        A.      AMUNDSON TRUST SHOULD BE APPOINTED LEAD PLAINTIFF.............4

                1.      Amundson Trust is Willing to Serve as Class Representative....................6

                2.      Amundson Trust has the "Largest Financial Interest"................................7

                3.      Amundson Trust Otherwise Satisfies the Requirements  of Rule 23
                        of the Federal Rules of Civil Procedure.........................................8

                4.      Amundson Trust Will Fairly and Adequately Represent the
                        Interests of the Class and is not Subject to any Unique Defenses ............10

        B.      LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE
                APPROVED .........................................................................................10

IV.     CONCLUSION................................................................................................11

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page**

*Albert Fadem Trust v. Citigroup Inc.*,
   239 F. Supp. 2d 344 (S.D.N.Y. 2002) ...................................................................... 8

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ............................................................................................... 9

*Bassin v. Decode Genetics, Inc.*,
   230 F.R.D. 313 (S.D.N.Y. 2005) ........................................................................... 5

*Beck v. Maximus*,
   457 F.3d 291 at 296 (3d Cir. 2006) ........................................................................ 9

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
   252 F.R.D. 188 (S.D.N.Y. 2008) ........................................................................... 4

*Canson v. WebMD Health Corp.*, No. 11-cv-5382-JFK,
   2011 WL 5331712 (S.D.N.Y. Nov. 7, 2011) ........................................................ 8

*Chilton v. Chiumento Group*,
   365 Fed. App'x 298 (2d Cir. 2010) ........................................................................ 7

*Ghodooshim v. Qiao Xing Mobile Commc'n Co., Ltd.*, No. 12-cv-9264-JSR,
   2013 WL 2314267 (S.D.N.Y. May 21, 2013) ...................................................... 9

*Gluck v. Cellstar Corp.*,
   976 F. Supp. 542 (N.D. Tex. 1997) ....................................................................... 8

*In re Bank of Am. Corp. Sec., Deriv. and ERISA Litig.*,
   258 F.R.D. 260 (S.D.N.Y. 2009) ........................................................................... 7

*In re Comverse Tech., Inc., Sec. Litig.*,
   2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007) ...................................... 7

*In re Donkenny, Inc. Sec. Litig.*,
   171 F.R.D. 156 (S.D.N.Y. 1997) ........................................................................... 7

*In re Drexel Burnham Lambert Group, Inc.*,
   960 F.2d 285 (2d Cir. 1992) ................................................................................... 8

*In re Elan Corp. Sec. Litig.*, No. 02 Civ. 865 (WK) (FM),
   2002 U.S. Dist. LEXIS 23162 (S.D.N.Y. Dec. 3, 2002) ...................................... 8

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05-cv-10240-CM,
   2007 WL 2230177 (S.D.N.Y. July 27, 2007) ....................................................... 8

*In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC),
    2009 U.S. Dist. LEXIS 69133 ..............................................................................5

*In re Olsten Corp. Sec. Litig.*,
    3 F. Supp. 2d at 296 ..........................................................................................8

*In re Oxford Health Plans, Inc. Sec. Litig.*,
    182 F.R.D. 42 (S.D.N.Y. 1998) ......................................................................... 8

*In re Tronox, Inc. Sec. Litig.*,
    262 F.R.D. 338 (S.D.N.Y. 2009) ....................................................................... 4

*Johnson v. Celotex Corp.*,
    899 F.2d 1281 (2d Cir. 1990)............................................................................ 4

*Lax v. First Merchants Acceptance Corp.*,
    1997 WL 461036 (N.D. Ill. 1997) .................................................................... 7

*Malcolm v. Nat'l Gypsum Co.*,
    995 F.2d 346 (2d Cir. 1993)............................................................................. 4

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
    589 F. Supp. 2d 388 (S.D.N.Y. 2008)......................................................... 7, 10

*Xianglin Shi v. Sina Corp.*, No. 05-cv-2154-NRB,
    2005 WL 1561438 (S.D.N.Y. July 1, 2005) ...................................................... 9

## Statutes

15 U.S.C. § 78u 4(a)(3)(B)(v)................................................................................ *passim*

## Rules

Fed. R. Civ. P. 23(a)(3)......................................................................................... *passim*

Fed. R. Civ. P. 42(a) ..................................................................................................... 4

## Other Authorities

Manual for Complex Litigation (Third), § 20.123 (1995) ............................................. 4

## I.        PRELIMINARY STATEMENT

Currently pending in this District are at least three federal securities class action lawsuits (the "Related Actions")[1] filed on behalf of a class of all persons, other than Defendants (the "Class"), who purchased or otherwise acquired securities of Iconix Brand Group, Inc. ("Iconix" or the "Company") between February 20, 2013 and August 7, 2015, both dates inclusive (the "Class Period").[2]   Each raises substantially similar allegations: defendants violated Federal Securities Law by issuing false and misleading statements.

Pursuant to the PSLRA, the court appoints as Lead Plaintiff the movant who possesses the largest financial interest in the outcome of the action and who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). LA Amundson Qualified Annuity Trust ("Amundson Trust"), with losses of approximately $21,318 in connection with its purchases of Inconix securities during the Class Period, has the largest financial interest in the relief sought in this action.   Amundson Trust further satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure as it is an adequate representative with claims typical of the other Class members.   Accordingly, Amundson Trust respectfully submits that it be appointed Lead Plaintiff.

## II.       STATEMENT OF FACTS

Defendant Iconix, brand management company and owner of a diversified portfolio of global consumer brands across women's, men's, entertainment and home. The Company's purported business strategy is to maximize the value of its brands primarily through strategic

---

[1] The Related Actions are *Niksich v. Iconix Brand Group, Inc. et al.,* No. 1:15-cv-04860-PGG (filed on June 23, 2015) and *Haverhill Retirement System v. Iconix Brand Group, Inc. et al.,* No. 1:15-cv-06658-LTS (filed on August 21, 2015).

[2] The *Nikisch* complaint alleges a class period of February 20, 2013 through April 17, 2015, both dates inclusive. The *Haverhill Retirement System* complaint alleges a class period of February 20, 2013 through August 7, 2015 both dates inclusive.

licenses and joint venture partnerships around the world, as well as to grow the portfolio of brands through strategic acquisitions.

The Company operates through an "asset-light" brand-management system, which purportedly generates revenue streams through the licensing of intellectual property rights, without huge outlays of cash for inventory or property, plant and equipment.

The Company typically purchases the licensing rights to an existing consumer fashion brand for a fixed acquisition cost, and licenses the right to use the brand in clothing, shoes, household items, media, etc. through a series of agreements with various partners and joint ventures in exchange for licensing fees. The company was formerly known as Candie's, Inc. and changed its name to Iconix Brand Group, Inc. in July 2005. Iconix Brand Group, Inc. was founded in 1978 and is based in New York, New York.  The Company's shares trades on the NYSE under the ticker symbol "ICON".

Throughout the Class Period, defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, defendants made false and/or misleading statements and/or failed to disclose that: (1) that the Company had underreported the cost basis of its brands; (2) that the Company engaged in irregular accounting practices related to the booking of its joint venture revenues and profits, free-cash flow, and organic growth; and (4) as a result of the foregoing, Iconix's public statements were materially false and misleading at all relevant times.

On March 30, 2015 after the close of the trading session, the Company announced in a press release that its Chief Financial Officer ("CFO"), Jeff Lupinacci ("Lupinacci"), had resigned effective March 30, 2015. Therein, the Company stated in relevant part:

On March 24, 2015, Jeff Lupinacci, the Chief Financial Officer of Iconix Brand Group, Inc. (the "Company") notified the Company of his intention to resign, with 60 days' notice, to pursue another business opportunity. The Company has determined to make such resignation effective March 30, 2015. The Company has commenced a search for Mr. Lupinacci's replacement and anticipates filling the position in the near term. Mr. David Blumberg, the Company's current Executive Vice President – Head of Strategic Development, will assume Mr. Lupinacci's duties on an interim basis until an appropriate replacement has been identified.

On this news the Company's shares fell $2.72 per share, or 7%, to close on March 31, 2015 at $33.67 per share on unusually high volume.

On April 17, 2015, after the market closed, Iconix announced that the Company's Chief Operating Officer ("COO") Seth Horowitz ("Horowitz") had resigned after serving for approximately one year. The Company stated that it did not intend to name a new COO.

On April 20, 2015, Roth Capital Partners published an Equity Research Note (the "Note"), entitled "ICON: COO Departure Creates Greater Uncertainty; Lowering Target To $36." The Note revealed the accounting irregularities with free-cash flow accounting, organic growth, and gains on Licensing Fees, stating in relevant part, "[n]ews of the COO's resignation is likely to weigh on shares near-term, particularly following the CFO's recent departure as well as uncertainties surrounding the company's prior reporting of free cash flow and practice of booking joint venture gains as revenue." The Note further stated that, "This announcement [of the COO departure] follows the March 30 resignation of chief financial officer, Jeff Lupinacci, who will pursue another business opportunity. While not necessarily connected, Lupinacci's departure came after uncertainties surrounding the company's reporting of free cash flow."

On this news, shares of Iconix declined $6.62 per share, over 20%, to close on April 20, 2015, at $25.41 per share, on unusually heavy volume.

3

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## III.   ARGUMENT

### A.   THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

Consolidation of related cases is appropriate, where, as here, the actions involve common questions of law and fact, and therefore consolidation would avoid unnecessary cost, delay and overlap in adjudication:

> Where actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters at issue in the actions; it may order all the actions consolidated; and it may make such order concerning proceedings therein as may tend to avoid unnecessary costs or delay.
> Fed. R. Civ. P. 42(a).  See also Manual for Complex Litigation (Third), § 20.123 (1995).

Consolidation is appropriate when the actions before the court involve common questions of law **or** fact.  *See* Fed. R. Civ. P. 42(a); *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (consolidating securities class actions); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008) (same). Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interest of judicial economy served by consolidation. *See In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 U.S. Dist. LEXIS 69133, at *4–8 (S.D.N.Y. July 29, 2009) (consolidating actions asserting different claims against different defendants over different class periods).

4

The Related Actions at issue here clearly involve common questions of law **and** fact. Each action is brought against the Company, as well as certain officers and directors of the Company, in connection with violations of the federal securities laws.  Accordingly, the Related Actions allege substantially the same wrongdoing, namely that defendants issued materially false and misleading statements and omissions that artificially inflated the price of Inconix's securities and subsequently damaged the Class when the Company's stock price crashed as the truth emerged.  Consolidation of the Related Actions is therefore appropriate.  *See Bassin v. Decode Genetics, Inc.*, 230 F.R.D. 313, 315 (S.D.N.Y. 2005) (consolidation of securities class actions is particularly appropriate in the context of securities class actions where the complaints are based on the same statements and the defendants will not be prejudiced); *In re GE*, 2009 U.S. Dist. LEXIS 69133, at *5 ("Consolidation promotes judicial convenience and avoids unnecessary costs to the parties.").

### B.        AMUNDSON TRUST SHOULD BE APPOINTED LEAD PLAINTIFF

Section 21D(a)(3)(B) of the PSLRA sets forth procedures for the selection of a lead plaintiff in class actions brought under the Exchange Act.  The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of class action by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate.  15 U.S.C. § 78u-4(a)(3)(B)(i) &(ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any such notice.  Under this section, the Court "shall" appoint "the presumptively most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

(aa) has either filed the complaint or made a motion in response to a notice . . .;

(bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and

 (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Amundson Trust satisfies all three of these criteria and thus is entitled to the presumption that it is the most adequate plaintiff of the Class and therefore should be appointed Lead Plaintiff for the Class.

### 1.  Amundson Trust is Willing to Serve as Class Representative

On June 23, 2015, counsel in the first-filed action caused a notice (the "Notice") to be published over *BusinesWire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, which announced that a securities class action had been filed against the defendants herein, and advised investors in Iconix securities that they had until August 24, 2015 to file a motion to be appointed as Lead Plaintiff.  *See* PSLRA Early Notice, Declaration of Jeremy A. Lieberman in Support of the Motion by LA Amundson Qualified Annuity Trust for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Lead Counsel ("Lieberman Decl."), Ex. A.

Amundson Trust has filed the instant motion pursuant to the Notice, and has attached a certification attesting that it is willing to serve as a representative for the Class and provide testimony at deposition and trial, if necessary. *See* LA Amundson Qualified Annuity Trust Certification, Lieberman Decl., Ex. B. Accordingly, Amundson Trust satisfies the first requirement to serve as Lead Plaintiff for the Class.

## 2.  **Amundson Trust has the "Largest Financial Interest"**

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii). *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 394-395 (S.D.N.Y. 2008); *In re Donkenny, Inc. Sec. Litig.*, 171 F.R.D. 156, 157 (S.D.N.Y. 1997).

As of the time of the filing of this motion, Amundson Trust believes  that  it  has  the largest financial interest of any of the Lead Plaintiff movants based on the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*, 1997 WL 461036, at *5 (N.D. Ill. 1997) (financial interest may be determined by (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered).[3]

During the Class Period, Amundson Trust (1) purchased 1,500 shares of Iconix common stock; (2) expended $60,600 on its purchases of Iconix shares; (3) retained 15,000 of its Iconix shares; and, (4) as a result of the revelations of the fraud, suffered a loss of $21,318.   *See* Amundson Trust Loss Chart, Lieberman Decl., Ex. C.  Because Amundson Trust possesses the largest financial interest in the outcome of this litigation, it may be presumed to be the "most adequate" plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb); *see also Chilton v. Chiumento Group*, 365 Fed. App'x 298, 299 (2d Cir. 2010) (discussing qualifications for Lead Plaintiff presumption); *In re Bank of Am. Corp. Sec., Deriv. and ERISA Litig.*, 258 F.R.D. 260, 268 (S.D.N.Y. 2009).

---

[3]      *See also In re Olsten Corp. Sec. Litig.,* 3 F. Supp.2d 286, 296 (E.D.N.Y. 1998).  *Accord In re Comverse Tech., Inc., Sec. Litig.*, 2007 U.S. Dist. LEXIS 14878, at *22-*25 (E.D.N.Y. Mar. 2, 2007) (collectively, the "*Lax-Olsten"* factors.).

### 3. Amundson Trust Otherwise Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a Lead Plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); *see also In re Elan Corp. Sec. Litig.,* No. 02 Civ. 865 (WK) (FM), 2002 U.S. Dist. LEXIS 23162, at *7 (S.D.N.Y. Dec. 3, 2002); *Albert Fadem Trust v. Citigroup Inc*., 239 F. Supp. 2d 344, 347 (S.D.N.Y. 2002). Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification; instead a *prima facie* showing that the movant satisfies the requirements of Rule 23 is sufficient. *See Canson v. WebMD Health Corp.*, No. 11-cv-5382-JFK, 2011 WL 5331712, at *4 (S.D.N.Y. Nov. 7, 2011). Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (citing *Gluck v. Cellstar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997); *Olsten.*, 3 F. Supp. 2d at 296 (quoting *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).

The typicality requirement of Fed. R. Civ. P. 23(a)(3) is satisfied where the named representative's claims are typical of the class' claims. *In re EVCI Career Colleges Holding Corp. Sec. Litig.,* No. 05-cv-10240-CM, 2007 WL 2230177, at *13 (S.D.N.Y. July 27, 2007)

("[t]ypicality does not require that the factual background of each named plaintiffs claim be identical to that of all class members.").

The claims of Amundson Trust are typical of those of the Class.  Amundson Trust alleges, as do all class members, that defendants violated Federal Securities Laws by making false or misleading statements of material facts concerning Iconix during the Class Period, or omitted to state material facts necessary to make the statements they did make not misleading. Amundson Trust, as did all members of the Class, purchased Iconix shares at prices artificially inflated by defendants' misrepresentations or omissions and was damaged upon the disclosure of those misrepresentations and/or omissions.  These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where it is established that a representative party "will fairly and adequately protect the interests of the class."  The class representative must also have sufficient interest in the outcome of the case to ensure vigorous advocacy. *See Xianglin Shi v. Sina Corp.*, No. 05-cv-2154-NRB, 2005 WL 1561438, at *3 (S.D.N.Y. July 1, 2005); *Ghodooshim v. Qiao Xing Mobile Commc'n Co., Ltd.*, No. 12-cv-9264-JSR, 2013 WL 2314267 (S.D.N.Y. May 21, 2013); (3d Cir. 2006) *Beck v. Maximus*, 457 F.3d 291 at 296 (3d Cir. 2006) (emphasizing that the adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent," (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)).

Amundson Trust adequately represents the Class. There is no antagonism between Amundson Trust's interests and those of the Class, and its losses demonstrate that it has a sufficient interest in the outcome of this litigation. Moreover, Amundson Trust has retained

counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this action, and submits its choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

### 4. Amundson Trust Will Fairly and Adequately Represent the Interests of the Class and is not Subject to any Unique Defenses

The presumption in favor of appointing Amundson Trust as Lead Plaintiff may be rebutted only upon proof "by a purported member of the plaintiffs' class" that the presumptively most adequate plaintiff:

> (aa)   will not fairly and adequately protect the interest of the class; or

> (bb)   is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 .S.C. § 78u-4(a)(3)(b)(iii)(I).

Amundson Trust's ability and desire to fairly and adequately represent the Class has been discussed above.  Amundson Trust is not aware of any unique defenses defendants could raise that would render its inadequate to represent the Class.  Accordingly, Amundson Trust should be appointed Lead Plaintiff for the Class.

### C. LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court.  15 U.S.C. § 78u-4(a)(3)(B)(v).  The Court should interfere with Lead Plaintiff's selection only when necessary "to protect the interests of the class." 15 U.S.C.§ 78u-4(a)(3)(B)(iii)(II)(aa).  *See Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008) (emphasizing that the PSLRA "evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.").

Here, Amundson Trust has selected Pomerantz as Lead Counsel. Pomerantz is highly experienced in the area of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors as detailed in the firm's resume. *See* Firm Resume of Pomerantz, Lieberman Decl., Ex. D. As a result of the firm's extensive experience in litigation involving issues similar to those raised in this action, Amundson Trust's counsel have the skill and knowledge which will enable them to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by approving Amundson Trust's selection of Counsel, the members of the class will receive the best legal representation available.

## IV.    CONCLUSION

For the foregoing reasons, Amundson Trust respectfully requests that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing Amundson Trust as Lead Plaintiff; (3) approving Pomerantz as Lead Counsel; and (4) granting such other relief as the Court may deem to be just and proper.

Dated: August 24, 2015
New York, New York

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: 212-661-1100
Facsimile:  212-661-8665

and

Patrick V. Dahlstrom
10 South LaSalle Street, Suite 3505
Chicago, IL 60603
Telephone: 312-377-1181
Facsimile:  312-377-1184

*Counsel for Movants and Proposed Lead*
*Counsel for the Class*

11