**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GENE NIKSICH, Individually and on Behalf of All Others Similarly Situated, | **No. 1:15-cv-04860-PGG** |
| Plaintiff, | |
| v. | ECF Case |
| ICONIX BRAND GROUP, INC., NEIL COLE, WARREN CLAMEN, and JEFF LUPINACCI, | |
| Defendants. | |
| LORENZO LAZARO, Individually and on Behalf of All Others Similarly Situated, | **No. 1:15-cv-04981-PGG** |
| Plaintiff, | |
| v. | ECF Case |
| ICONIX BRAND GROUP, INC., NEIL COLE, WARREN CLAMEN, and JEFF LUPINACCI, | |
| Defendants. | |
| HAVERHILL RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | **No. 1:15-cv-06658** |
| Plaintiff, | |
| v. | ECF Case |
| ICONIX BRAND GROUP, INC., NEIL COLE, WARREN CLAMEN, JEFF LUPINACCI, and DAVID BLUMBERG, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF THE ICON INVESTOR GROUP'S MOTION FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................... 1

FACTUAL BACKGROUND ............................................................................... 2

ARGUMENT ...................................................................................................... 5

I.       The Related Actions Should Be Consolidated ......................................... 5

II.      The ICON Investor Group Should Be Appointed Lead Plaintiff ............... 6

         A.       The PSLRA Standard For Appointing Lead Plaintiff ..................... 6

         B.       The ICON Investor Group Is The "Most Adequate Plaintiff" ......... 7

                  1.       The ICON Investor Group Filed a Timely Motion .............. 7

                  2.       The ICON Investor Group Has the Largest Financial Interest ... 8

                  3.       The ICON Investor Group Satisfies the Requirements of Rule 23 of the
                           Federal Rules of Civil Procedure .................................... 9

                           a.       The ICON Investor Group's Claims are Typical ......... 10

                           b.       The ICON Investor Group Will Fairly and Adequately Protect the
                                    Interests of the Class ...................................... 11

III.     The Court Should Approve Lead Plaintiff's Choice of Counsel ............... 13

CONCLUSION ................................................................................................ 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.,*
258 F.R.D. 260 (S.D.N.Y. 2009) ........................................................................11

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.,*
No. 08 M.D.L. 1963, 2009 WL 50132 (S.D.N.Y. Jan. 5, 2009)............................1, 6

*In re Cable & Wireless, PLC Sec. Litig.,*
217 F.R.D. 372 (E.D. Va. 2003) .........................................................................13

*In re Cendant Corp. Litig.,*
264 F.3d 201 (3d Cir. 2001)..............................................................................9, 13

*City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Svcs. Grp., Inc.*
269 F.R.D. 291 (S.D.N.Y. 2010) ......................................................................10, 11

*Greebel v. FTP Software, Inc.,*
939 F. Supp. 57 (D. Mass. 1996) ........................................................................8

*Johnson v. Celotex Corp.,*
899 F.2d 1281 (2d Cir. 1990)..............................................................................5

*Johnson v. Pozen Inc.,*
No. 07-cv-599, 2008 WL 474334 (M.D.N.C. Feb. 15, 2008) ................................13

*Kuriakose v. Fed. Home Loan Mortg. Co.,*
No. 08-cv-7281 (JFK), 2008 WL 4974839 (S.D.N.Y. Nov. 24, 2008) ...................10

*Laborers Local 1298 Pension Fund v. Campbell Soup Co.,*
No. CIV. A. 00-152 (JEI), 2000 WL 486956 (D.N.J. Apr. 24, 2000) .............12, 13

*In re Molycorp, Inc. Sec. Litig.,*
No. 12-cv-0292-WJM-KMT, 2012 U.S. Dist. LEXIS 89191
(D. Colo. May 29, 2012)....................................................................................11

*In re Oxford Health Plans, Inc. Sec. Litig.,*
182 F.R.D. 42 (S.D.N.Y. 1998) ..........................................................................12

*Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.,*
275 F.R.D. 187 (S.D.N.Y. 2011) ........................................................................6

*Plumbers & Pipefitters Local 51 Pension Fund v. First Bancorp,*
409 F. Supp. 2d 482 (S.D.N.Y. 2006).................................................................12

*Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*,
    256 F.R.D. 620 (E.D. Wis. 2009) ........................................................................6

*Reitan v. China Mobile Games & Entm't Grp. Ltd.*,
    No. 14-cv-4471 (KMW), 2014 WL 6491433 (S.D.N.Y. Nov. 20, 2014)..............10

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
    589 F. Supp. 2d 388, 396 (S.D.N.Y. 2008)...........................................................9

**Rules & Statutes**

Fed. R. Civ. P. 23 ......................................................................................... *passim*

Fed. R. Civ. P. 42(a) ......................................................................................1, 5, 6

15 U.S.C. 78u-4(a) *et seq.* .............................................................................. *passim*

**Docketed Cases**

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
    No. 04-cv-8141 (S.D.N.Y.).....................................................................................14

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
    No. 08-md-1963 (S.D.N.Y.) ...................................................................................14

*In re Fannie Mae 2008 Sec. Litig.*,
    No. 08-cv-7831 (S.D.N.Y.).....................................................................................14

*In re Mercury Interactive Corp. Sec. Litig.*,
    No. 05-cv-3395 (N.D. Cal.) ....................................................................................14

*The City of Farmington Hills Emps. Ret. Sys. v. Wells Fargo Bank,* N.A.,
    No. 10-cv-04372-DWF/JJG (D. Minn.)................................................................14

MARTA/ATU Local 732 Employees Retirement Plan ("MARTA/ATU") and Mary Ann and Robert Abbott (collectively, the "ICON Investor Group" or "Movants") respectfully submit this memorandum of law in support of their motion for the entry of an order:  (1) consolidating the above-captioned related actions pursuant to Rule 42(a) of the Federal Rules of Civil Procedure ("Rule 42(a)"); (2) appointing the ICON Investor Group as Lead Plaintiff for a class of all persons or entities who purchased or otherwise acquired the securities of Iconix Brand Group, Inc. ("Iconix" or the "Company") between February 20, 2013 and August 7, 2015, inclusive (the "Class Period");[1] and (3) approving the ICON Investor Group's selection of Glancy Prongay & Murray LLP ("Glancy Prongay & Murray") and Labaton Sucharow LLP ("Labaton Sucharow") as Co-Lead Counsel for the purchasers and acquirers of Iconix securities during the Class Period (the "Class").

## PRELIMINARY STATEMENT

Pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), the person or group of persons with the largest financial interest in the relief sought by the Class who otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure is presumed to be the "most adequate plaintiff" – the plaintiff most capable of adequately representing the interests of Class members.  The PSLRA provides that the Court shall appoint the most adequate plaintiff as lead plaintiff.  The ICON Investor Group believes that it is the "most adequate plaintiff" as defined by the PSLRA, and should be appointed Lead Plaintiff

---

[1]  The complaints in the above-captioned actions allege slightly different class periods.  For the purposes of appointing the Lead Plaintiff, the longest class period governs.  *See*, *e.g.*, *In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, No. 08 M.D.L. 1963, 2009 WL 50132, at *8 (S.D.N.Y. Jan. 5, 2009) (noting that when initial complaints allege multiple class periods, "the lead plaintiff analysis should utilize the most inclusive class period because 'it encompasses more potential class members …'") (citation omitted).

based on its financial losses suffered as a result of Defendants' wrongful conduct as alleged in the actions. Moreover, the ICON Investor Group satisfies the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure, as its claims are typical of other Class members' claims, and it will fairly and adequately represent the interests of the Class. In addition, Movants' selection of Glancy Prongay & Murray and Labaton Sucharow as Co-Lead Counsel should be approved because the firms have substantial expertise in securities class action litigation and the experience and resources to efficiently prosecute this action.

## FACTUAL BACKGROUND

This is a securities class action on behalf of a putative Class comprising purchasers of Iconix securities between February 20, 2013 and August 7, 2015, inclusive. Plaintiffs seek to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

Iconix is a brand management company and owner of a diversified portfolio of global consumer brands across fashion, entertainment and home. The Company specializes in marketing, merchandising, and licensing its brand portfolio. The Company purports that it maximizes the value of its brands primarily through strategic licenses and joint venture partnerships around the world.

The Company operates through an "asset-light" brand-management system geared toward generating revenue streams through the licensing of intellectual property rights without large outlays of cash for inventory or property, plant, and equipment. Iconix typically purchases the licensing rights ("Licensing Rights") to an existing consumer fashion brand for a fixed acquisition cost (or cost basis), and licenses the right to use the brand through a series of agreements with various partners and joint ventures in exchange for licensing fees.

Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose the following material adverse facts about the Company's business, operations, and prospects: (1) the Company had underreported the cost basis of the Licensing Rights to certain brands; (2) that the Company engaged in irregular accounting practices related to the booking of its joint venture revenues and profits, free-cash flow, and organic growth; (3) that, as a result, the Company's earnings and revenues were overstated; and (4) that, as a result of the foregoing, Defendants' statements about Iconix's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

During the Class Period, the Company consistently reported "record" revenue, earnings per share, and free cash flow results, with rapidly increasing equity earnings on joint ventures investments, on a quarter-over-quarter basis. Unbeknownst to investors, however, Defendants were violating the federal securities laws by underreporting the cost basis of certain Licensing Rights acquisitions and engaging in irregular accounting practices related to the booking of its joint venture revenues and profits, free-cash flow, and organic growth. As a result of Defendants' deceptive accounting practices, the Company overstated its financial results and performance, causing Iconix's securities to trade at artificially inflated prices, reaching a Class Period high closing price of $44.22 per share on June 9, 2014.

The true state of the Company's specious accounting practices was revealed through a series of partial disclosures and conspicuously-timed executive resignations. On March 30, 2015, after the close of the trading session, the Company announced in a press release that its Chief Financial Officer, Jeff Lupinacci, had resigned effective March 30, 2015. On this news the Company's shares fell $2.72 per share, or 7%, to close on March 31, 2015 at $33.67 per share on unusually high volume.

On April 20, 2015, Roth Capital Partners, published an Equity Research Note, entitled, "ICON: COO Departure Creates Greater Uncertainty; Lowering Target To $36," which revealed the accounting irregularities with free-cash flow accounting, organic growth, and gains on Licensing Fees.  On this news, shares of Iconix declined $6.62 per share, over 20%, to close on April 20, 2015 at $25.41 per share on unusually heavy volume.

On August 6, 2015, after the close of the trading session, the Company announced in a press release that its founder and Chief Executive Officer ("CEO"), Neil Cole had resigned effective immediately.  On this news, Iconix's stock price dropped $4.68 per share, or 23.88 percent, to close at $14.92 per share on August 7, 2015 on unusually high volume.

Finally, on August 10, 2015, prior to the open of the trading session, Iconix released disappointing results for the second quarter ended June 30, 2015 and drastically cut its full year sales guidance.  Specifically, quarterly revenues missed consensus estimates by 14 percent, and quarterly earnings missed by 13 percent.  In connection with its results, Iconix also reported that the SEC has been inquiring about the Company's accounting for joint venture transactions.

In an accompanying press release, the Company disclosed that the SEC was reviewing its "accounting treatment for the formation of the Company's international joint ventures under U.S. Generally Accepted Accounting Principles and whether such joint ventures should potentially have been consolidated in the Company's historical results."  Iconix also revealed that its board had formed an independent committee to review this questionable accounting.  The Company warned that it may ultimately be forced to reverse certain gains it had recognized on its historical joint venture transactions and that the specific amounts that could be reversed as a result of improper accounting were estimated to be $46.5 million in 2014, $24.6 million in 2013, and $5.6 million in 2012.

4

In reaction to these revelations, Iconix's stock price declined $0.35 per share, or 2.3 percent, to close at $14.57 per share on August 10, 2015 on extremely high volume.

Defendants' violations of the securities laws and the revelations thereof have caused Iconix investors to incur significant losses.

## PROCEDURAL HISTORY

Plaintiff Gene Niksich ("Niksich") commenced the first of the above-captioned cases against Iconix on June 23, 2015.  That same day, counsel for Niksich published a notice on *Business Wire* announcing that a securities class action had been initiated against Defendants herein.

In addition and subsequent to the *Niksich* complaint, two other related actions were filed in this District making similar allegations against substantially similar defendants as the *Niksich* complaint: *Lazaro v. Iconix Brand Group, Inc.*, No. 15-cv-04981-PGG (filed June 25, 2015); and *Haverhill Retirement System v. Iconix Brand Group, Inc.*, No. 15-cv-06658 (filed August 21, 2014) (*Niksich*, *Lazaro*, and *Haverhill* are collectively referred to as the "Related Actions").

## ARGUMENT

I.    **THE RELATED ACTIONS SHOULD BE CONSOLIDATED**

Consolidation pursuant to Rule 42(a) is proper when actions involve common questions of law and fact.  *See Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990).

Each of the Related Actions presents similar factual and legal issues, as they all involve the same subject matter and present the nearly identical legal issues.  Each action names the same defendants (while the *Haverhill* complaint added one additional defendant), each alleges violations of the Exchange Act, each presents the same or similar theories for recovery, and each is based on the same allegedly wrongful course of conduct.  Because the Related Actions arise from the same facts and circumstances and involve the same subject matter, consolidation of

5

these cases under Rule 42(a) is appropriate.[2]  *See Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 192 (S.D.N.Y. 2011) (concluding that consolidation is appropriate "if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation.").

## II.    THE ICON INVESTOR GROUP SHOULD BE APPOINTED LEAD PLAINTIFF

The ICON Investor Group respectfully submits that it should be appointed Lead Plaintiff because it timely filed the instant motion, believes it has the largest financial interest of any qualified movant, and satisfies the typicality and adequacy requirements of Rule 23.

### A.    The PSLRA Standard For Appointing Lead Plaintiff

The PSLRA provides a straightforward, sequential procedure for selecting a lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  *See* 15 U.S.C. § 78u-4(a)(l); *see also* 15 U.S.C. § 78u-4(a)(3)(B).  First, Section 21D(a)(3)(A)(i) of the Exchange Act, as amended by the PSLRA, specifies that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class–

---

[2]  As noted above, the *Niksich* and *Lazaro* actions assert claims on behalf of purchasers of Iconix securities between February 20, 2013 and April 17, 2015, inclusive, while the *Haverhill* action alleges a slightly longer class period – between February 20, 2013 and August 7, 2015, inclusive. For purposes of appointing the Lead Plaintiff, the longest alleged class period governs.  *See In re Bear Stearns Cos.*, 2009 WL 50132, at *8 ("Courts have held that in circumstances like the one here, the lead plaintiff analysis should utilize the most inclusive class period because 'it encompasses more potential class members ....'"); *see also Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 624–25 (E.D. Wis. 2009) (noting that, for purposes of selecting lead plaintiff, courts usually utilize the most inclusive class period and select the movant with the largest financial interest under that period).

(I)    of the pendency of the action, the claims asserted therein, and the purported class period; and

(II)    that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Next, pursuant to the PSLRA, a court is to consider any motion made by class members to serve as lead plaintiff and appoint the "most adequate plaintiff."  15 U.S.C. § 78u-4(a)(3)(B)(i).  In adjudicating a lead plaintiff motion, a court shall adopt a presumption that the "most adequate plaintiff" is the person or "group of persons" who: (1) filed a complaint or made a motion to serve as lead plaintiff; (2) has the largest financial interest in the relief sought by the class; and (3) who otherwise satisfies the requirements of Rule 23.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  This presumption may be rebutted only by "proof" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

**B.**    **The ICON Investor Group Is The "Most Adequate Plaintiff"**

The ICON Investor Group respectfully submits that it is presumptively the "most adequate plaintiff" because it has complied with the PSLRA's procedural requirements, possesses the largest financial interest of any qualified movant, and satisfies Rule 23's typicality and adequacy requirements.

**1.**    **The ICON Investor Group Filed a Timely Motion**

On June 23, 2015, pursuant to 15 U.S.C. 78u-4(a)(3)(A)(i), counsel for Niksich published a notice of the pendency of plaintiff's case on *Business Wire* – a widely circulated national business-oriented wire service – announcing that a securities class action had been filed against

7

Defendants herein and advising purchasers of Iconix securities that they had 60 days from the publication of the June 23, 2015 notice to file a motion to be appointed as lead plaintiff.  *See* Declaration of Michael W. Stocker in Support of the ICON Investor Group's Motion for Consolidation of Related Cases, Appointment as Lead Plaintiff and Approval of Lead Counsel ("Stocker Decl.") at Exhibit ("Exh.") A; *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 62–63 (D. Mass. 1996) (publication on a national wire service satisfies the PSLRA notice requirement). Similarly, counsel for Haverhill published notice of the pendency of plaintiff's case on August 21, 2015 in *Globe Newswire* – a widely circulated national business-oriented wire service – announcing the expanded class period and notifying investors of the August 24, 2015 deadline to seek appointment as lead plaintiff.  *See* Exh. A.

The ICON Investor Group timely filed this motion within the 60-day period following publication of the June 23, 2015 PSLRA notice, and submits herewith sworn certifications of its members and attest that each member is willing to serve as a representative of the Class and are willing to provide testimony at deposition and trial, if necessary.  *See* Stocker Decl., Exh. B.  By making a timely motion in response to a PSLRA notice, the ICON Investor Group satisfies the first PSLRA requirement to be appointed Lead Plaintiff.  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(aa).

## 2.  The ICON Investor Group Has the Largest Financial Interest

The PSLRA requires a court to adopt the rebuttable presumption that "the most adequate plaintiff … is the person or group of persons that … has the largest financial interest in the relief sought by the class." 15 U.S.C. §78u-4(a)(3)(B)(iii).  At the time of this filing, the ICON Investor Group believes that it has the largest financial interest among Class members who filed

timely applications for appointment as lead plaintiff and, accordingly, is presumed to be the "most adequate plaintiff."

The ICON Investor Group  purchased Iconix securities during the Class Period at prices alleged to be artificially inflated by Defendants' misstatements and omissions and, as a result, suffered financial losses of approximately $1,201,437.27 on a last-in-first-out ("LIFO") basis. *See* Stocker Decl., Exh. C.  The ICON Investor Group is not aware of any other Class member claiming larger financial losses that have filed a motion for appointment as Lead Plaintiff. Consequently, the ICON Investor Group believes that it has the "largest financial interest in the relief sought by the Class."  Thus, the ICON Investor Group satisfies the second PSLRA requirement – the largest financial interest – to be appointed as Lead Plaintiff for the Class.  *See Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 396 (S.D.N.Y. 2008).

**3.    The ICON Investor Group Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure**

The PSLRA further provides that in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure."  *See In re Cendant Corp. Litig.*, 264 F.3d 201, 263 (3d Cir. 2001).  Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

Fed. R. Civ. P. 23(a).

In making its determination that a lead plaintiff candidate otherwise satisfies the requirements of Rule 23, "typicality and adequacy of representation are the only provisions [of

Rule 23] relevant to the determination." *City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Svcs. Grp., Inc.* 269 F.R.D. 291, 296 (S.D.N.Y. 2010) (citation omitted).  At the lead plaintiff stage of the litigation, a movant need only make a preliminary showing that it satisfies Rule 23's typicality and adequacy requirements.  *Id.* at 296–97 (citing *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 102 (S.D.N.Y. 2005)); *see also Kuriakose v. Fed. Home Loan Mortg. Co.*, No. 08-cv-7281 (JFK), 2008 WL 4974839, at *5 (S.D.N.Y. Nov. 24, 2008).

### a.        The ICON Investor Group's Claims are Typical

The Rule 23(a) typicality requirement is satisfied when a plaintiff's claims arise from the same event, practice or course of conduct that gives rise to other class members' claims, and plaintiff's claims are based on the same legal theory.  *See Id.,* at *4.  Rule 23 does not require the lead plaintiff to be identically situated with all class members.  *Id.*

The ICON Investor Group's claims are typical of the claims asserted by the proposed Class.  Like all members of the Class, the ICON Investor Group alleges that Defendants' material misstatements and omissions concerning Iconix's business, operations, and financial prospects violated the federal securities laws.  The ICON Investor Group, like all of the members of the Class, purchased Iconix securities in reliance on Defendants' alleged misstatements and omissions and were damaged thereby.  Because the ICON Investor Group's claims are based on the same legal theories and arise from the same events, practices, or course of conduct that gives rise to the claims of other Class members, the typicality requirement is satisfied.  *See Reitan v. China Mobile Games & Entm't Grp. Ltd.*, No. 14-cv-4471 (KMW), 2014 WL 6491433, at *9 (S.D.N.Y. Nov. 20, 2014) (finding claims of movant typical because they were "based on the same legal theory . . . and ar[o]se from the same events and course of conduct . . . as the Class's claims").  As such, the ICON Investor Group's claims are typical of those of the Class.

### b. The ICON Investor Group Will Fairly and Adequately Protect the Interests of the Class

"The adequacy requirement is satisfied where: (1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *City of Monroe*, 269 F.R.D. at 297.

The ICON Investor Group is an adequate representative for the Class. The ICON Investor Group has retained qualified counsel experienced in vigorously and efficiently prosecuting securities class actions. *See* § III, *infra*. Additionally, as evidenced by its substantial financial harm from Class Period purchases of Iconix securities due to Defendants' misrepresentations and omissions, the ICON Investor Group's interests are clearly aligned with the members of the Class, and no antagonism exists between the ICON Investor Group's interests and those of the absent class members.

In fact, the members of the ICON Investor Group have executed Certifications and a Joint Declaration affirming their commitment to actively overseeing and monitoring the prosecution of this litigation in the Class' best interest. *See* Stocker Decl., Exhs. B & F, respectively; *see also In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 270 (S.D.N.Y. 2009) (appointing group and noting "declarations demonstrating cooperative efforts among" the group's members); *In re Molycorp, Inc. Sec. Litig.*, No. 12-cv-0292-WJM-KMT, 2012 U.S. Dist. LEXIS 89191, at *9 (D. Colo. May 29, 2012) ("A small, cohesive group can best represent the interests of the absent class members in the event that a Lead Plaintiff later withdraws, or if defendants successfully challenge one of the group during the pendency of the litigation").

Specifically, the Joint Declaration establishes, *inter alia*, that:

- Based on their respective financial losses, to gain the advantages of joint decision-making and to provide the class broad representation, MARTA/ATU and Mary Ann and Robert Abbott affirmatively decided to seek joint appointment as lead plaintiff (Stocker Decl., Exh. F, ¶¶ 5–6);

- MARTA/ATU and Mary Ann and Robert Abbott personally discussed seeking appointment in this case before filing a motion (*Id.*, ¶¶ 9-11);

- MARTA/ATU and Mary Ann and Robert Abbott have explicitly acknowledged and accepted their duties and obligations to all Class members if selected as Lead Plaintiff and are committed to seeking the largest possible recovery for the class (*Id.*, ¶¶ 1–4, 21);

- MARTA/ATU and Mary Ann and Robert Abbott  are committed to overseeing counsel to ensure that the case is efficiently litigated in the class's best interest and have directed counsel to establish minimum reporting protocols to ensure their proper oversight of counsel (*Id.*, ¶¶ 12, 14); and

- MARTA/ATU and Mary Ann and Robert Abbott are committed to collaboratively working together to manage this litigation on behalf of the proposed class (*Id.*, ¶ 10).

Moreover, the combination of MARTA/ATU and Mary Ann and Robert Abbott — a large institutional investor and sophisticated, married individual investors — provides the class broad representation "ensur[ing] that the interests of all class members will be adequately represented in the prosecution of the action and in the negotiation and approval of a fair settlement, and that the settlement process will not be distorted by the differing aims of differently situated claimants."  *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998).  As such, the Court should have "no doubt" that a group composed of an institutional investor and private individual investors "could collectively fulfill the functions of lead plaintiff in a fair, adequate, and effective manner." *Plumbers & Pipefitters Local 51 Pension Fund v. First Bancorp*, 409 F. Supp. 2d 482, 483 (S.D.N.Y. 2006) (appointing two individual investors and an institutional investor that "could collectively fulfill the functions of lead plaintiff in a fair, adequate, and effective manner"); *Laborers Local 1298 Pension Fund v. Campbell Soup Co.*, No. CIV. A. 00-152 (JEI), 2000 WL 486956, at *3 (D.N.J. Apr. 24, 2000) ("It is the intention of the Court to appoint DeValle, Green and the Treasurer of the State of

Connecticut as co-lead plaintiffs pursuant to the PSLRA [because] [t]he Court [] considers it desirable to have both an institutional investor, like Connecticut, and individual investors, like DeValle and Green, included as lead plaintiffs since each may bring a unique perspective to the litigation.").[3]

Finally, there is no evidence of collusion, as none exists.  Accordingly, the ICON Investor Group satisfies Rule 23's adequacy requirement.

## III.   THE COURT SHOULD APPROVE LEAD PLAINTIFF'S CHOICE OF COUNSEL

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject only to approval of the Court.  *See* 15 U.S.C. §78u-4(a)(3)(B)(v); *In re Cendant Corp.*, 264 F.3d at 274.  Thus, the Court should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa).

Here, the ICON Investor Group has retained Glancy Prongay & Murray and Labaton Sucharow to pursue this litigation on its behalf and will retain the firms as the Class' Co-Lead Counsel in the event they are appointed Lead Plaintiff.  Glancy Prongay & Murray and Labaton Sucharow possess extensive experience in securities litigation and have successfully prosecuted numerous securities fraud class actions on behalf of injured investors, as reflected by the firms' résumés attached to the Stocker Decl. as Exhs. D & E.

---

[3] *See also In re Cable & Wireless, PLC Sec. Litig.*, 217 F.R.D. 372, 379 (E.D. Va. 2003) (appointment of institutional investor and individual investor "will ensure that all class members will be adequately represented in this action"); *Johnson v. Pozen Inc.*, No. 07-cv-599, 2008 WL 474334, at *2 (M.D.N.C. Feb. 15, 2008) ("[A]n institution/individual Co–Lead Plaintiff structure will provide a diversity of representation and also protect the interests of the class at class certification in the event that either Rodriguez or the Pension Fund later leaves the action for whatever reason.") (citing cases).

For example, Glancy Prongay & Murray served as co-lead counsel in *In re Mercury Interactive Corporation Sec. Litig.*, No. 05-cv-3395 (N.D. Cal.), in which it achieved a settlement valued at over $117 million.  Additionally, Glancy Prongay & Murray served as co-lead counsel, achieving a settlement valued at $62.5 million on the eve of trial in *The City of Farmington Hills Employees Retirement System v. Wells Fargo Bank*, N.A., No. 10-cv-04372-DWF/JJG (D. Minn.).  Currently, Glancy Prongay & Murray is serving as lead or co-lead counsel in securities actions against, amongst others, FireEye, Inc., Penn West Petroleum Ltd., and ITT Educational Services Inc.  *See* Stocker Decl. Exh. D.

Similarly, Labaton Sucharow has excelled as lead counsel in numerous landmark securities class actions on behalf of defrauded investors.  Labaton Sucharow served as lead counsel in *In re American International Group, Inc. Securities Litigation*, No. 04-cv-8141 (S.D.N.Y.), in which it achieved a recovery totaling more than $1 billion for injured investors.  Labaton Sucharow also secured a $294.9 million recovery in *In re Bear Stearns Cos., Inc. Securities, Derivative, & ERISA Litigation*, No. 08-md-1963 (S.D.N.Y.), in which the firm served as co-lead counsel.  Recently, following six years of litigation, as co-lead counsel, Labaton Sucharow achieved a $170 million recovery in *In re Fannie Mae 2008 Securities Litigation*, No. 08-cv-7831 (S.D.N.Y.).  Labaton Sucharow presently serves as lead or co-lead counsel in securities class actions against Goldman Sachs Group, Inc. and Facebook, Inc., among other significant investor class actions pending in this and other Districts.  *See* Stocker Decl. Exh. E.

Thus, the Court may be assured that, by granting the Movants' motion, the Class will receive the highest caliber of legal representation.

## CONCLUSION

For the foregoing reasons, the ICON Investor Group respectfully requests the Court to grant their Motion and enter an Order (1) consolidating the above-captioned cases, (2) appointing the ICON Investor Group as Lead Plaintiff, (3) approving its selection of Glancy Prongay & Murray and Labaton Sucharow as Co-Lead Counsel for the Class, and (4) granting such other relief as the Court may deem just and proper.

DATED: August 24, 2015                    Respectfully submitted,

                                          /s/Michael W. Stocker
                                          Christopher J. Keller
                                          Eric J. Belfi
                                          Michael W. Stocker
                                          Francis P. McConville
                                          **LABATON SUCHAROW LLP**
                                          140 Broadway
                                          New York, New York  10005
                                          Telephone: (212) 907-0700
                                          Facsimile:  (212) 818-0477
                                          ckeller@labaton.com
                                          ebelfi@labaton.com
                                          mstocker@labaton.com
                                          fmcconville@labaton.com


                                          **GLANCY PRONGAY & MURRAY LLP**
                                          Lesley F. Portnoy
                                          122 East 42nd Street, Suite 2920
                                          New York, New York 10168
                                          Telephone: (212) 682-5340
                                          Facsimile: (212) 884-0988

                                                   -and-

                                          **GLANCY PRONGAY & MURRAY LLP**
                                          Lionel Z. Glancy
                                          Robert V. Prongay
                                          Casey E. Sadler
                                          1925 Century Park East, Suite 2100
                                          Los Angeles, California 90067
                                          Telephone: (310) 201-9150

Facsimile: (310) 201-9160

*Counsel for the ICON Investor Group and*
*Proposed Co-Lead Counsel for the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2015, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 24th day of August, 2015 at New York, New York.

/s/Michael W. Stocker
Michael W. Stocker
**LABATON SUCHAROW LLP**
140 Broadway
New York, New York  10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Email: mstocker@labaton.com