**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| GENE NIKSICH, individually and on behalf of all others similarly situated, | : | Civil Action No. 1:15-cv-04860 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| ICONIX BRAND GROUP, INC., NEIL COLE, WARREN CLAMEN, and JEFF LUPINACCI, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| LORENZO LAZARO, individually and on behalf of all others similarly situated, | : | Civil Action No. 1:15-cv-04981 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| ICONIX BRAND GROUP, INC., NEIL COLE, WARREN CLAMEN, and JEFF LUPINACCI, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, INDIANA LABORERS PENSION FUND AND TOWN OF DAVIE POLICE OFFICERS' PENSION PLAN FOR APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF THEIR SELECTION OF LEAD COUNSEL, AND CONSOLIDATION OF ALL RELATED ACTIONS**

HAVERHILL RETIREMENT SYSTEM,
individually and on behalf of all others
similarly situated,

               Plaintiff,

         v.

ICONIX BRAND GROUP, INC.,
NEIL COLE, WARREN CLAMEN,
JEFF LUPINACCI, and DAVID
BLUMBERG,

            Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No. 1:15-cv-06658

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION .................................................................................................................. 1

SUMMARY OF THE PENDING ACTIONS ........................................................................ 2

ARGUMENT .......................................................................................................................... 4

    A.    The Pension Funds Should Be Appointed as Lead Plaintiff .................................. 4

        1.    The Pension Funds' Motion Is Timely ...................................................... 4

        2.    The Pension Funds Have the Largest Financial Interest in the
             Relief Sought by the Class ........................................................................ 5

        3.    The Pension Funds Satisfy Rule 23 of the Federal Rules of Civil
             Procedure at This Stage ............................................................................. 5

    B.    The Court Should Approve the Pension Funds' Selection of Counsel ................... 7

    C.    All Related Actions Should Be Consolidated ..................................................... 10

CONCLUSION ..................................................................................................................... 11

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Albert Fadem Trust v. Citigroup Inc.*,
   239 F. Supp. 2d 344 (S.D.N.Y. 2002)...................................................................10

*Glauser v. EVCI Career Colls. Holding Corp.*,
   236 F.R.D. 184 (S.D.N.Y. 2006) .........................................................................7

*Quan v. Advanced Battery Techs., Inc.*,
   No. 11 Civ. 2279 (CM), 2011 WL 4343802 (S.D.N.Y. Sept. 9, 2011) ...................................11

*Reitan v. China Mobile Games & Entm't Grp., Ltd.*,
   68 F. Supp. 3d 390 (S.D.N.Y. 2014)..................................................................4, 5, 7

**Statutes**

15 U.S.C. § 78u-4(a) .......................................................................... *passim*

**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995),
   *reprinted in* 1995 U.S.C.C.A.N. 730 (1995).........................................................7

James D. Cox & Randall S. Thomas, "Does the Plaintiff Matter?"
   106 Colum. L. Rev. 1587 (Nov. 2006) ...............................................................7

Moore's Federal Practice § 23.191[3][b][v] ...............................................................7

Southeastern Pennsylvania Transportation Authority ("SEPTA"), Indiana Laborers Pension Fund ("ILPF") and Town of Davie Police Officers' Pension Plan ("DPOPP") (collectively, the "Pension Funds") respectfully submit this memorandum of law in support of their motion for appointment as lead plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); approval of their selection of Chimicles & Tikellis LLP ("C&T") and Cohen Milstein Sellers & Toll PLLC ("CMST") as Co-Lead Counsel for the Class; and consolidation of all related actions.

## **INTRODUCTION**

At least three class action lawsuits are pending in this District on behalf of purchasers of Iconix Brand Group, Inc. ("Iconix" or the "Company") common stock between February 20, 2013 and August 7, 2015, inclusive (the "Class Period"), seeking to pursue remedies under Section 10(b), Rule 10b-5 promulgated thereunder, and Section 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") against the Company and certain of its senior officers.

In federal securities class actions, the Private Securities Litigation Reform Act ("PSLRA") requires district courts to appoint as lead plaintiff the "member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The Pension Funds should be appointed as lead plaintiff because they: (1) timely filed this Motion; (2) have the largest financial interest in the outcome of this litigation of any plaintiff of which their counsel is aware; and (3) will adequately represent the interests of the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii). In addition, the Pension Funds' selection of C&T and CMST as Co-Lead Counsel for the Class should be approved. *See* 15 U.S.C. § 78u- 4(a)(3)(B)(v). Further, the related actions should be consolidated under Federal Rule of Civil Procedure 42(a) as the claims, facts and legal issues are nearly identical.

## SUMMARY OF THE PENDING ACTIONS

Iconix is a brand management company engaged in licensing, marketing and supporting a diversified and growing consumer brand portfolio. During the Class Period, Defendants portrayed Iconix as a high-growth company with a unique business model that manages brands and sells products through a worldwide network of retail and wholesale licensees and joint venture partners. Pursuant to this business model, the Company could forgo the expense of inventory, property, plants and equipment.

The filed complaints allege that, during the Class Period, the Company made numerous false and misleading statements about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that the Company had: (1) underreported the cost basis of its brands and (2) engaged in irregular accounting practices related to the booking of its joint venture revenues and profits, free-cash flow, and organic growth.  As a result, the Company's earnings and revenues were overstated and prior statements made about Iconix's business, operations, and prospects were false and misleading and/or lacked a reasonable basis. For example, during the Class Period, Defendant Neil Cole, Chairman and CEO of Iconix, stated:  "With record results in the first quarter, 2013 is off to a strong start and we are on track to deliver over 20% revenue and EPS growth for the full year…. we are also focused on continuing to build our portfolio of brands organically through our global platform, and we believe that with our free cash flow and strong balance sheet we will continue to create increased shareholder value."  At the end of the first quarter of 2014, Cole stated: "I'm pleased with our first quarter results and believe our ability to drive 33% earnings per share growth demonstrates the power of our business model. Through our diversified portfolio of brands and expanding global footprint, we continue to achieve strong growth and generate significant free cash flow." Cole repeatedly expressed to investors that free-cash flow was an integral part of the

Company's business model and that Iconix "continue(d) to demonstrate the power of our business model with our diversified revenue stream and strong free cash flow." These misrepresentations caused the Company's stock price to be artificially inflated throughout the Class Period.

On March 30, 2015, the Company announced that its Chief Financial Officer ("CFO"), Defendant Jeff Lupinacci, had resigned effective immediately. On this news, the Company's shares fell $2.72 per share, or 7%, to close on March 31, 2015 at $33.67 per share on unusually high volume.  On April 17, 2015, after the market closed, Iconix announced that the Company's Chief Operating Officer ("COO") Seth Horowitz had resigned after serving for approximately one year. Thereafter, on April 20, 2015, Roth Capital Partners, published an Equity Research Note entitled, "ICON: COO Departure Creates Greater Uncertainty; Lowering Target To $36." That report tied the COO's departure to accounting irregularities with free-cash flow accounting, organic growth, and gains on licensing revenue, noting that "[n]ews of the COO's resignation is likely to weigh on shares near-term, particularly following the CFO's recent departure as well as uncertainties surrounding the company's prior reporting of free cash flow and practice of booking joint venture gains as revenue."  On this news, the price of Iconix's stock fell $6.62 per share, or 20.7%, to close at $25.41 per share on heavy trading volume. Defendant Cole claimed that the departure of these executives was not related to the allegations of accounting improprieties against the Company, but he offered no other explanation.

Thereafter, on August 6, 2015, the Company announced that Cole was stepping down as CEO and Chairman. Then, on August 10, 2015, the Company held a conference call during which Iconix disclosed that the SEC was reviewing the Company's accounting for joint venture transactions.  In response to these disclosures, the price of Iconix's common stock dropped by over 25%, declining from $19.60 on August 6, 2015 to close at $14.57 per share on August 10, 2015.

## ARGUMENT

### A.    The Pension Funds Should Be Appointed as Lead Plaintiff

The PSLRA establishes the procedure for the appointment of a lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1); *see also* 15 U.S.C. § 78u-4(a)(3)(B)(i). First, the pendency of the action must be publicized in a widely circulated national business-oriented publication or wire service not later than 20 days after filing of the first complaint. 15 U.S.C. § 78u- 4(a)(3)(A)(i). Next, the PSLRA provides that the Court "shall adopt a presumption that the most adequate plaintiff is the person or group of persons that – (aa) has either filed the complaint or made a motion in response to a notice . . .; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii); *Reitan v. China Mobile Games & Entm't Grp., Ltd*., 68 F. Supp. 3d 390, 395 (S.D.N.Y. 2014). The Pension Funds meet these requirements and should therefore be appointed as Lead Plaintiff.

### 1.    The Pension Funds' Motion Is Timely

The first complaint in this action, captioned *Niksich v. Iconix Brand Group, Inc.* ("*Niksich*"), was filed on June 23, 2015, and counsel for plaintiffs published notice that same day advising Class members of: (1) the pendency of the action; (2) the claims asserted therein; (3) that the action covered a class period of February 20, 2013 through April 17, 2015, inclusive; and (4) the right to move the Court to be appointed as lead plaintiff within 60 days of publication, or by August 24, 2015. *See* Declaration of Gerald H. Silk in Support of Motion for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel ("Silk Decl."), Ex. A. On August 21, 2015, a subsequent notice was published alerting investors to the filing of a complaint

expanding the alleged class period in this action to run from February 20, 2013 through August 7, 2015 (the "Class Period").  *See* Silk Decl., Ex. B.  Because the Pension Funds' motion is being filed on August 24, 2015, they are eligible for appointment as lead plaintiff.

>          **2.      The Pension Funds Have the Largest Financial Interest in the Relief Sought by the Class**

During the Class Period, the Pension Funds purchased more than 100,000 shares of Iconix common stock and suffered losses of nearly $1.9 million under a last-in, first-out ("LIFO") analysis and nearly $2.4 million under a first-in, first-out ("FIFO") analysis as a result of Defendants' alleged misconduct. *See* Silk Decl., Exs. C-D. To the best of counsel's knowledge, there are no other plaintiffs with a larger financial interest. Therefore, the Pension Funds satisfy the PSLRA's prerequisite of having the largest financial interest.[1]

>          **3.      The Pension Funds Satisfy Rule 23 of the Federal Rules of Civil Procedure at This Stage**

In addition to possessing a significant financial interest, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Of the four Rule 23 requirements, typicality and adequacy are generally considered the most relevant to the appointment of a lead plaintiff. *See Reitan*, 68 F. Supp. 3d at 400-01 (considering only the typicality and adequacy requirements at the lead plaintiff stage). The typicality requirement of Rule 23(a)(3) is met where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Id.* at 400 (citation omitted). "In order for the [adequacy] requirement to be satisfied, '(1) there should be no conflict between the proposed lead plaintiff and the members of the class, (2) the selected counsel should be qualified, experienced, and able to conduct the

---

[1] Under the class period alleged in *Niksich*, the Pension Funds have losses of over $750,000 under LIFO and over $1 million under FIFO.

litigation, and (3) the lead plaintiff should have a sufficient interest in the outcome to insure vigorous advocacy.'" *Id.* (citation omitted). Here, the Pension Funds' claims are based on the same legal theory (violations of the Exchange Act) and arise from the same events and course of conduct (Iconix's false and misleading statements) as the Class's claims. Indeed, the Pension Funds' investment in Iconix spans the entire Class Period, which will ensure the entire Class's interests are protected and advanced. *See* Silk Decl., Exs. C-D.

Moreover, the Pension Funds satisfy the adequacy requirements because there are no conflicts between them and the members of the Class, because their selected counsel is qualified (as discussed below) and because the Pension Funds have a substantial interest in the outcome of this litigation based upon the significant damages they suffered as a result of Defendants' misrepresentations. Silk Decl., Exs. C-E. The adequacy of the Pension Funds to prosecute this action as Lead Plaintiff is further demonstrated by the Joint Declaration submitted herewith, which details the steps the members have taken to work together to formalize their leadership of this action.[2]   As set forth in the Joint Declaration, representatives of the Pension Funds held a conference call during which they discussed their shared interests in prosecuting the claims against Iconix, as well as the procedures they have implemented to ensure effective oversight of this action and of their chosen counsel.   Joint Decl. ¶¶10-13.   As three sophisticated pension funds with significant experience serving as fiduciaries and monitoring counsel in securities litigation and in other contexts, the Pension Funds not only share a strong commitment to prosecuting this action in a cost-effective manner, but have a proven ability and wherewithal to do so.   Joint Decl. ¶¶1-3,

---

[2] *See* Joint Declaration of Gino Benedetti, Janetta England, and Greg Brillant in Support of the Motion of the Southeastern Pennsylvania Transportation Authority, Indiana Laborers' Pension Fund, and Town of Davie Police Officers' Pension Plan for Appointment as Lead Plaintiff, Approval of Their Selection of Lead Counsel, and Consolidation of All Related Actions, Silk Decl., Ex. E ("Joint Decl.").

7-10.

Indeed, as institutional investors, the Pension Funds are precisely the type of lead plaintiff envisioned by Congress when it enacted the PSLRA.  *See* H.R. Conf. Rep. No. 104-369, at *34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (1995) ("The Conference Committee believes that increasing the role of institutional investors … will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions.").  "According to Congress, institutional investors appointed as lead plaintiffs would be the most competent plaintiff to select and control lead counsel."  Moore's Federal Practice § 23.191[3][b][v].  In fact, "Congress clearly envisioned that various financial institutions – pension funds, insurance companies, and mutual funds – were the most likely types of investors who could combine a large financial stake in the suit's outcome with the sophistication to guide the suit to an appropriate result."  James D. Cox & Randall S. Thomas, "Does the Plaintiff Matter?," 106 Colum. L. Rev. 1587, 1588-89 (Nov. 2006); *see also Glauser v. EVCI Career Colls. Holding Corp.*, 236 F.R.D. 184, 188 (S.D.N.Y. 2006) ("[T]he PSLRA was passed, at least in part, to increase the likelihood that institutional investors would serve as lead plaintiffs in actions such as this one.") (quoting *In re Veeco Instruments, Inc.*, 233 F.R.D. 330, 332-33 (S.D.N.Y. 2005)).

As such, the Pension Funds satisfy the typicality and adequacy requirements at this stage.

**B.     The Court Should Approve the Pension Funds' Selection of Counsel**

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to this Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should not disturb the lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *Reitan*, 68 F. Supp. 3d at 401. The Pension Funds have selected C&T and CMST to serve as Co-Lead Counsel.  *See* Joint Decl.

As detailed in the firms' resumes, the Pension Funds' proposed Co-Lead Counsel have

extensive expertise and experience in the field of securities litigation and have successfully prosecuted numerous securities fraud class actions and obtained excellent recoveries on behalf of defrauded investors.  *See* C&T and CMST Firm Resumes, Silk Decl., Exs. F & G.

C&T has secured billions of dollars of recoveries in actions filed on behalf of, among others, investors and those harmed due to corporate misconduct that violates federal and state laws. Silk Decl., Ex. F.  C&T, with over 25 years of experience as securities counsel, has served as lead and co-lead counsel in cases subject to the PSLRA that have secured substantial and meaningful recovery for investors.  For example, C&T has served as co-lead counsel in *In re CNL Hotels & Resorts Inc. Federal Securities Litigation*, No. 04-cv-1231 (M.D. Fla.); *City of St. Clair Shores General Employees Retirement System v. Inland Western Retail Real Estate Trust, Inc.*, No. 07-cv-6174 (N.D. Ill.); and *In re Wells Real Estate Investment Trust, Inc. Securities Litigation*, No. 1:07-cv-00862/1:07-cv-02660 (N.D. Ga.), in which settlements included a $35 million cash settlement fund and $225 million in savings for the CNL shareholders; $90 million in savings for the Inland shareholders; and a $7 million cash settlement fund for the Wells investors. Notably, C&T, including Ms. Donaldson Smith, successfully litigated *In re Real Estate Associates Limited Partnership Litigation*, No. 98-cv-7035 (C.D. Cal.), through a six-week jury trial that resulted in a landmark $184 million plaintiffs' verdict, which is one of the largest, sustained jury verdicts since the passage of the PSLRA. The *Real Estate Associates* judgment was settled for $83 million, which represented full recovery for the Class (and an amount in excess of the damages calculated by plaintiffs' expert).

Federal and state courts nationwide have commended C&T for its representation of investors.  For example, in approving the settlement in *CNL Hotels,* the presiding judge, the Honorable Gregory A. Presnell, stated that "Plaintiffs' counsel pursued this complex case

8

diligently, completely and professionally" and "achieved a successful result." "[In settling the federal securities law claims], a substantial benefit [was] achieved (estimated at approximately $225,000,000)" and "this lawsuit was clearly instrumental in achieving that result." And, in approving the settlement, post-trial, of the *Real Estate Associates* case, the presiding judge, the Honorable Dean D. Pregerson, stated, "[The verdict and settlement qualified] as an exceptional result" in "a very difficult case… on a scale of 1 to 10, it would be a 9 or 10." "Certainly there have been no objections, and I think Plaintiffs' counsel has served the class very well."

Likewise, CMST has obtained billions of dollars in recoveries for investors who have been injured as a result of corporate misconduct – roughly $2 billion in the last few years alone. Silk Decl., Ex. G. Of particular note, the firm negotiated a landmark $500 million settlement in the Countrywide mortgage-backed securities ("MBS") class action and another $500 million settlement in the Bear Stearns MBS class action; obtained approval for both a $275 million settlement in an MBS class action against Royal Bank of Scotland and for $335 million in settlements in the Residential Accredit Loans, Inc. ("RALI") MBS class action; and recovered $219 million for investors in Bernard Madoff feeder funds.

Courts have spoken highly of CMST's work. In May 2015, U.S. District Judge Laura Taylor Swain granted final approval to the $500 million recovery in the *Bear Stearns* class action, calling the settlement "impressive." In March 2015, in *Policemen's Annuity and Benefit Fund of the City of Chicago v. Bank of America, N.A. and U.S. Bank National Association*, another of CMST's cases, U.S. District Judge Katherine B. Forrest remarked, in approving a class settlement: "[T]his is a very, very good result for the plaintiffs … the vigorously fought class action here and well represented class action is something of which plaintiff[s'] counsel can be proud." In the *Parmalat* case, U.S. District Judge Lewis A. Kaplan said that CMST "did a wonderful job here for

the class and were in all respects totally professional and totally prepared." He added: "I wish I had counsel this good in front of me in every case." U.S. District Judge T.S. Ellis, III, in *In re Bearing Point Securities Litigation*, noted that "people who run corporations are generally deterred by the fact that there are the ... Cohen Milsteins out there."

In addition, Bernstein Litowitz Berger & Grossmann LLP has extensive experience in the area of securities and complex litigation, and is highly qualified to perform the duties of Liaison Counsel. *See* Silk Decl., Ex. H.

Thus, the Court may be confident that the Class will receive the highest caliber of legal representation in full compliance with the mandates of the PSLRA. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Albert Fadem Trust v. Citigroup Inc.*, 239 F. Supp. 2d 344, 348 (S.D.N.Y. 2002) (approving as lead counsel law firm with "substantial experience and success in prosecuting securities fraud actions").

Based upon Co-Lead Counsel's experience and proven track record as counsel in securities class actions, the Pension Funds' selection of C&T and CMST as Co-Lead Counsel should be approved.

### C.   All Related Actions Should Be Consolidated

There are at least three related securities class actions pending in the Southern District of New York on behalf of investors who purchased Iconix common stock, as set forth below:

| Case Caption | Civil No. | Date Filed |
|---|---|---|
| *Niksich v. Iconix Brand Group, Inc.* | 1:15-cv-04860 | June 23, 2015 |
| *Lazaro v. Iconix Brand Group, Inc.* | 1:15-cv-04981 | June 25, 2015 |
| *Haverhill Retirement System v. Iconix Brand Group, Inc.* | 1:15-cv-06658 | August 21, 2015 |

The above actions present nearly identical factual and legal issues as they each arise out of the same alleged misconduct – the purchase of Iconix common stock at artificially inflated prices

due to the same false and misleading statements.  These actions each assert the same federal securities claims under Sections 10(b) and 20(a) of the Exchange Act. Accordingly, consolidation of the above actions is appropriate under Rule 42(a) of the Federal Rules of Civil Procedure and the PSLRA. *See, e.g., Quan v. Advanced Battery Techs., Inc*., No. 11 Civ. 2279 (CM), 2011 WL 4343802, at *1 (S.D.N.Y. Sept. 9, 2011) (consolidating five related actions that "involve[d] securities claims brought on behalf of purchasers of [the company's] securities during the Class Period").

## CONCLUSION

For the reasons discussed above, the Pension Funds respectfully request that the Court: (1) appoint them to serve as Lead Plaintiffs pursuant to Section 21D(a)(3)(B) of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B); (2) approve their selection of Chimicles & Tikellis LLP and Cohen Milstein Sellers & Toll PLLC as Co-Lead Counsel for the Class; (3) consolidate all related actions; and (4) grant such other relief as the Court may deem just and proper.

Dated:  August 24, 2015                      Respectfully submitted,

                                                     _____/s/ Gerald H. Silk_____
                                             Gerald H. Silk
                                             BERNSTEIN LITOWITZ BERGER
                                                 & GROSSMANN LLP
                                             1285 Avenue of the Americas
    New York, NY 10019
    (212) 554-1400
    jerry@blbglaw.com

    *Liaison Counsel and Counsel for the Town of Davie Police Officers' Pension Plan*

    Kimberly Donaldson Smith
    Catherine Pratsinakis
    CHIMICLES & TIKELLIS LLP
    One Haverford Centre
    361 West Lancaster Ave.
    Haverford, PA 19041
    (610) 642-8500

kds@chimicles.com
cp@chimicles.com

*Counsel for Southeastern Pennsylvania
Transportation Authority and Proposed Co-
Lead Counsel for the Class*

Steven J. Toll
S. Douglas Bunch
COHEN MILSTEIN SELLERS
    & TOLL PLLC
1100 New York Ave. NW
Suite 500 East
Washington, DC 20005
(202) 408-4600
stoll@cohenmilstein.com
dbunch@cohenmilstein.com

Carol V. Gilden
COHEN MILSTEIN SELLERS
    & TOLL PLLC
190 S. LaSalle St.
Suite 1705
Chicago, IL 60603
(312) 357-0370
cgilden@cohenmilstein.com

*Counsel for Indiana Laborers Pension Fund
and Proposed Co-Lead Counsel for the Class*