UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x
GENE NIKSICH, Individually and on Behalf : Civil Action No. 1:15-cv-04860-PGG
of All Others Similarly Situated, :
: CLASS ACTION
Plaintiff, :
:
vs. :
:
ICONIX BRAND GROUP, INC., et al., :
:
Defendants. :
:
---------------------------------------------------------------- :
LORENZO LAZARO, Individually and on : Civil Action No. 1:15-cv-04981-PGG
Behalf of All Others Similarly Situated, :
: CLASS ACTION
Plaintiff, :
:
vs. :
:
ICONIX BRAND GROUP, INC., et al., :
:
Defendants. :
:
---------------------------------------------------------------- :
HAVERHILL RETIREMENT SYSTEM, : Civil Action No. 1:15-cv-06658-UA
Individually and on Behalf of All Others :
Similarly Situated, : CLASS ACTION
:
Plaintiff, :
:
vs. :
:
ICONIX BRAND GROUP, INC., et al., :
:
Defendants. :
---------------------------------------------------------------- x

MEMORANDUM OF LAW IN SUPPORT OF CITY OF ATLANTA POLICE OFFICERS'
PENSION FUND AND THE CITY OF ATLANTA FIREFIGHTERS' PENSION FUND'S
MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND
APPROVAL OF SELECTION OF LEAD COUNSEL

**TABLE OF CONTENTS**

        **Page**

I. PRELIMINARY STATEMENT ..................................................................................................1

II. FACTUAL BACKGROUND .....................................................................................................2

III. ARGUMENT ..............................................................................................................................5

    A. The Actions Should Be Consolidated for All Purposes ............................................5

    B. Atlanta Police and Firefighters Should Be Appointed Lead Plaintiff ......................5

        1. The PSLRA Standard for Appointing Lead Plaintiff ...................................5

        2. Atlanta Police and Firefighters Are the "Most Adequate Plaintiff" ............6

            a. Atlanta Police and Firefighters Have Satisfied the PSLRA's Procedural Requirements ................................................................6

            b. Atlanta Police and Firefighters Have the Largest Financial Interest in the Relief Sought by the Class ........................................7

            c. Atlanta Police and Firefighters Satisfy Rule 23's Typicality and Adequacy Requirements ...........................................................7

    C. The Court Should Approve Atlanta Police and Firefighters' Choice of Lead Counsel ..............................................................................................................9

IV. CONCLUSION ........................................................................................................................11

## TABLE OF AUTHORITIES

Page

**CASES**

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001)..................................................................................................9

*In re Elan Corp. Sec. Litig.*,
  No. 1:08-cv-08761-AKH, 2009 U.S. Dist. LEXIS 39859
  (S.D.N.Y. May 11, 2009)..............................................................................................6, 7, 8

*In re Enron Corp. Sec. Derivative & "ERISA" Litig.*,
  529 F. Supp. 2d 644 (S.D. Tex. 2006) ..................................................................................10

*In re Smith Barney Transfer Agent Litig.*,
  No. 05 Civ. 7583 (WHP), 2006 U.S. Dist. LEXIS 19728
  (S.D.N.Y. Apr. 17, 2006)........................................................................................................9

*Sgalambo v. McKenzie,*
  268 F.R.D. 170 (S.D.N.Y. 2010) ............................................................................................8

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
  §78u-4(a)(l) ............................................................................................................................5
  §78u-4(a)(3)(A)(i) ...............................................................................................................5, 6
  §78u-4(a)(3)(A)(i)(II) .............................................................................................................9
  §78u-4(a)(3)(B) ......................................................................................................................5
  §78u-4(a)(3)(B)(i) ...................................................................................................................5
  §78u-4(a)(3)(B)(iii)(I).........................................................................................................6, 7
  §78u-4(a)(3)(B)(iii)(II) ...........................................................................................................6
  §78u-4(a)(3)(B)(v)..................................................................................................................9

Federal Rules of Civil Procedure
  Rule 23 ............................................................................................................................1, 6, 7
  Rule 23(a)...............................................................................................................................7
  Rule 23(a)(3) ..........................................................................................................................8
  Rule 23(a)(4) ..........................................................................................................................8
  Rule 42(a)...............................................................................................................................5

City of Atlanta Police Officers' Pension Fund ("Atlanta Police") and the City of Atlanta Firefighters' Pension Fund ("Atlanta Firefighters" and together with Atlanta Police, "Atlanta Police and Firefighters") respectfully submit this memorandum of law in support of their motion for: (i) consolidation of the above-captioned related actions; (ii) appointment as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and (iii) approval of their selection of Robbins Geller Rudman & Dowd LLP ("Robbins Geller") and Saxena White P.A. ("Saxena White") as Lead Counsel for the Class.

## I.     PRELIMINARY STATEMENT

Atlanta Police and Firefighters respectfully submit that they should be appointed Lead Plaintiff in the above-captioned actions (the "Actions"). As set forth below, Atlanta Police and Firefighters incurred a loss of over $3.3 million from their purchases of Iconix Brand Group, Inc. ("Iconix" or the "Company") securities during the Class Period (February 20, 2013 through August 7, 2015).[1] Accordingly, Atlanta Police and Firefighters have a powerful economic interest in directing the litigation and recovering the losses they suffered – an interest believed to be greater than that of any other qualified movant.

Atlanta Police and Firefighters also meet the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") because their claims are typical of those of absent Class members, and because they will fairly and adequately represent the interests of the Class.

---

[1]     Copies of Atlanta Police and Firefighters' certifications are attached as Exhibit 1 to the Declaration of David A. Rosenfeld (cited herein as "Rosenfeld Decl."), filed herewith.

In addition, a chart reflecting the calculation of Atlanta Police and Firefighters' financial loss is attached as Exhibit 2 to the Rosenfeld Declaration.

Atlanta Police and Firefighters also respectfully request that the Court approve their choice of Lead Counsel for the Class. Atlanta Police and Firefighters' selection for Lead Counsel, Robbins Geller and Saxena White, are both nationally recognized securities class action firms that have recovered billions of dollars for the benefit of injured investors.

## II.     FACTUAL BACKGROUND

Pending before the Court are three securities class actions, which were brought against Iconix and its senior executives, for violations of the Securities Exchange Act of 1934 (the "Exchange Act").

Iconix is a brand management company and owner of a diversified portfolio of global consumer brands across women and men's fashion, entertainment and home. The Company's purported business strategy is to maximize the value of its brands primarily through strategic licenses and joint venture partnerships around the world, as well as to grow the portfolio of brands through acquisitions. The Company operates through an 'asset-light' brand-management system, which allegedly generates revenue streams through the licensing of intellectual property rights, without huge outlays of cash for inventory or property, plant and equipment.

The Company typically purchases the licensing rights to an existing consumer fashion brand for a fixed acquisition cost, and licenses the right to use the brand in clothing, shoes, household items, media, etc. through a series of agreements with various partners and joint ventures in exchange for licensing fees.

The complaints allege that, throughout the Class Period, Defendants made materially false and/or misleading statements and/or failed to disclose: (1) that the Company had underreported the cost basis of its brands; (2) that the Company engaged in irregular accounting practices related to the booking of its joint venture revenues and profits, free-cash flow, and organic growth; (3) that, as a result, the Company's earnings and revenues were overstated; and (4) that, as a result of the

foregoing, defendants' Class Period statements about Iconix's business, operations, and prospects were false and misleading and/or lacked a reasonable basis.

The true nature of the Company's operations started to come to light on December 14, 2014 when the Massachusetts-based research firm *Off Wall Street* distributed a report with a "sell" recommendation on Iconix shares citing organic sales declines in core portfolio brands and questionable accounting practices. On this news, Iconix's stock price dropped $2.39 per share, or 6%, to close at $36.86 per share on December 15, 2014 on unusually high volume.

Then, on March 30, 2015, the Company announced, after the close of trading, that its CFO, Jeff Lupinacci, had resigned, effective March 30, 2015. On this news, the Company's shares fell $2.72 per share, or 7%, to close on March 31, 2015, at $33.67 per share, on unusually high volume.

On April 13, 2015, the first in a series of three articles about Iconix was published on the investor news site Seeking Alpha. The article alleged that the Company's revenue and earnings growth has been driven by increasing sales of assets and "non-cash gains" from book value adjustments and that operating cash flow was declining. Days later, on April 15, 2015, just before the market closed, a second article about Iconix was published on Seeking Alpha, alleging that the Company was overstating its organic growth rate. On this news, shares of Iconix declined $1.27 per share from $33.30 per share on April 15, 2015, to close on April 17, 2015 at $32.03 per share, a two-day decline of nearly 4% on unusually heavy volume.

Then, on April 17, 2015, after the market closed, Iconix filed a Current Report with the SEC on Form 8-K and disclosed that the Company's COO, Seth Horowitz, had also resigned. Shortly after, on April 20, 2015, Roth Capital Partners published a note that, in relevant part, stated:

> News of the COO's resignation is likely to weigh on shares near-term, particularly following the CFO's recent departure as well as uncertainties surrounding the company's prior reporting of free cash flow and practice of booking joint venture

gains as revenue. . . . While not necessarily connected, Lupinacci's departure came after uncertainties surrounding the company's reporting of free cash flow.

On this news, shares of Iconix declined $6.62 per share, over 20%, to close on April 20, 2015, at $25.41 per share, on unusually heavy volume.

Thereafter, on August 6, 2015, after the close of the trading session, the Company announced in a press release that its founder and CFO, Neil Cole, had resigned effective immediately. On this news, Iconix's stock price dropped $4.68 per share, or over 23%, to close at $14.92 per share on August 7, 2015, on unusually high volume.

Finally, on August 10, 2015, prior to the open of the trading session, Iconix released disappointing results for the second quarter ended June 30, 2015 and drastically cut its full year sales guidance. Specifically, quarterly revenues missed consensus estimates by 14%, and quarterly earnings missed by 13%.

In connection with its results, Iconix also reported that the SEC has been inquiring about the Company's accounting for joint venture transactions. In an accompanying press release, the Company disclosed that the SEC was reviewing its "accounting treatment for the formation of the Company's international joint ventures under U.S. Generally Accepted Accounting Principles and whether such joint ventures should potentially have been consolidated in the Company's historical results." Iconix also revealed that its board of directors had formed an independent committee to review these questionable accounting practices. The Company warned that it may ultimately be forced to reverse certain gains it had recognized on its historical joint venture transactions and that the specific amounts that could be reversed as a result of improper accounting were estimated to be $46.5 million in 2014, $24.6 million in 2013, and $5.6 million in 2012.

In reaction to these revelations, Iconix's stock price declined $0.35 per share, or 2.3%, to close at $14.57 per share on August 10, 2015, on extremely high volume.

**III.    ARGUMENT**

    **A.    The Actions Should Be Consolidated for All Purposes**

The Actions name the same defendants and involve the same factual and legal issues. The Actions each seek relief from injuries caused by Defendants' fraud, which was perpetrated through the issuance of materially false and misleading statements and omissions. Consolidation is appropriate where there are actions involving common questions of law or fact. *See* Fed. R. Civ. P. 42(a). Accordingly, the Actions should be consolidated.

    **B.    Atlanta Police and Firefighters Should Be Appointed Lead Plaintiff**

        **1.    The PSLRA Standard for Appointing Lead Plaintiff**

The PSLRA provides a straightforward, sequential procedure for selecting a lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." *See* 15 U.S.C. §78u-4(a)(l); *see also* 15 U.S.C. §78u-4(a)(3)(B). First, the pendency of the action must be publicized in a widely circulated national business-oriented publication or wire service not later than 20 days after filing of the first complaint:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class–
>
> (I)    of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II)    that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. §78u-4(a)(3)(A)(i).

Next, under the PSLRA, a court is to consider any motion made by a class member to serve as lead plaintiff and appoint the "most adequate plaintiff." 15 U.S.C. §78u-4(a)(3)(B)(i). In adjudicating a lead plaintiff motion, a court shall adopt a presumption that the "most adequate

- 5 -

plaintiff" is the class member who: (1) filed a complaint or made a motion to serve as lead plaintiff; (2) has the largest financial interest in the relief sought by the class; and (3) who otherwise satisfies the requirements of Rule 23.  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I); *see also In re Elan Corp. Sec. Litig.*, Master File No. 1:08-cv-08761-AKH, 2009 U.S. Dist. LEXIS 39859, at *3 (S.D.N.Y. May 11, 2009) (discussing the lead plaintiff selection process).  This presumption may be rebutted only by proof that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II).

### 2. Atlanta Police and Firefighters Are the "Most Adequate Plaintiff"

Atlanta Police and Firefighters respectfully submit that they are presumptively the "most adequate plaintiff" because they have complied with the PSLRA's procedural requirements, possess the largest financial interest of any qualified movant, and satisfy Rule 23's typicality and adequacy requirements.

#### a. Atlanta Police and Firefighters Have Satisfied the PSLRA's Procedural Requirements

Atlanta Police and Firefighters filed this motion to serve as Lead Plaintiff in a timely manner. Pursuant to 15 U.S.C. §78u-4(a)(3)(A)(i), notices regarding the pending nature of this case (for both class periods) were published on *Business Wire* and *Globe Newswire,* widely-circulated, national, business-oriented news reporting wire services, on June 23, 2015 and August 21, 2015. *See* Notices, Rosenfeld Decl. Ex. 3.  Thus, pursuant to the PSLRA, any member of the proposed Class may apply to be appointed Lead Plaintiff within sixty days after publication of the notice, *i.e.*, on or before August 24, 2015.  Atlanta Police and Firefighters have filed their motion within the required timeframe.

### b. Atlanta Police and Firefighters Have the Largest Financial Interest in the Relief Sought by the Class

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" for lead plaintiff purposes is the movant with "the largest financial interest in the relief sought by the class," so long as the movant "otherwise satisfies the requirements of Rule 23." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

Atlanta Police and Firefighters incurred a loss of $3,334,180 on purchases of 150,305 shares of Iconix common stock during the Class Period. *See* Loss Analysis, Rosenfeld Decl. Ex. 2. Atlanta Police and Firefighters are unaware of any other movant with a larger financial interest in the outcome of the Actions.

### c. Atlanta Police and Firefighters Satisfy Rule 23's Typicality and Adequacy Requirements

In addition to requiring the identification of the movant with the largest financial interest, the PSLRA also directs that a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23. . . ." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). With respect to class certification, Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) such claims are typical of those of the class; and (4) the representative will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a). However, at "this [lead plaintiff appointment] stage of the litigation, the moving plaintiff is only required to make a preliminary showing that the adequacy and typicality requirements have been met." *Elan*, 2009 U.S. Dist. LEXIS 39859, at *5 (citation and internal quotations omitted). Atlanta Police and Firefighters unquestionably satisfy these requirements.

### (1) Atlanta Police and Firefighters' Claims Are Typical of Those of the Class

Pursuant to Rule 23(a)(3), the claims or defenses of the representative party must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Typicality requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Sgalambo v. McKenzie,* 268 F.R.D. 170, 173-74 (S.D.N.Y. 2010) (internal quotations omitted).

The typicality requirement is satisfied here because Atlanta Police and Firefighters – who are not subject to any unique or special defenses – seek the same relief and advance the same legal theories as do other Class members. As do all members of the Class, Atlanta Police and Firefighters purchased Iconix securities in reliance on the Company's public statements which contained materially false or misleading statements or omissions, and were damaged thereby. These shared claims, which are based on the same legal theories and arise from the same events and course of conduct as the claims of other Class members, satisfy Rule 23(a)(3)'s typicality requirement.

### (2) Atlanta Police and Firefighters Will Fairly and Adequately Protect the Interests of the Class

Pursuant to Rule 23(a)(4), the representative party must demonstrate that her or she "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts in this District assess a movant's adequacy based on: "(1) the size, available resources and experience of the proposed lead plaintiff; (2) the qualifications of the proposed class counsel; and (3) any potential conflicts or antagonisms rising among purported class members." *Elan*, 2009 U.S. Dist. LEXIS 39859, at *6 (citations omitted).

Atlanta Police and Firefighters will fairly and adequately represent the interests of the proposed Class. Atlanta Police and Firefighters have retained counsel highly experienced in

prosecuting securities class actions vigorously and efficiently, and have timely submitted their choice to the Court for approval, in accordance with the PSLRA.  *See* 15 U.S.C. §§78u-4(a)(3)(A)(i)(II) and (B)(v) (setting forth the requirements for timely motions and lead plaintiff's selection of counsel).  Finally, no antagonism exists between the interests of Atlanta Police and Firefighters and those of absent Class members; rather, the interests of Atlanta Police and Firefighters, whose significant losses provide sufficient interest in the outcome of the case to ensure vigorous advocacy, are squarely aligned with that of the Class.  Accordingly, Atlanta Police and Firefighters satisfy the adequacy requirement.

### C. The Court Should Approve Atlanta Police and Firefighters' Choice of Lead Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel for the class, subject to the court's approval.  *See* 15 U.S.C. §78u-4(a)(3)(B)(v).  "'The court should generally employ a deferential standard in reviewing the lead plaintiff's choices.'"  *In re Smith Barney Transfer Agent Litig.*, No. 05 Civ. 7583 (WHP), 2006 U.S. Dist. LEXIS 19728, at *15-*16 (S.D.N.Y. Apr. 17, 2006) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 274 (3d Cir. 2001)).

Robbins Geller and Saxena White are both highly qualified to lead this litigation.  *See* Firm Resumes, Rosenfeld Decl. Exs. 4-5.  Specifically, Robbins Geller has substantial experience in the prosecution of shareholder and securities class actions, including serving as lead counsel in *In re Enron Corporation Securities Litig.*, No. H-01-3624 (S.D. Tex.), in which Robbins Geller achieved the largest recovery ever obtained in a shareholder class action.  Specifically, the court in *Enron* stated:

> The firm is comprised of probably the most prominent securities class action attorneys in the country.  It is not surprising that Defendants have not argued that counsel is not adequate.  Counsel's conduct in zealously and efficiently prosecuting this litigation with commitment of substantial resources to that goal evidences those qualities . . . throughout this suit.

*In re Enron Corp. Sec. Derivative & "ERISA" Litig.*, 529 F. Supp. 2d 644, 675 (S.D. Tex. 2006).

Robbins Geller has also achieved numerous substantial recoveries in this District on behalf of shareholders, including very recently in *Landmen Partners Inc. v. Blackstone Group, L.P.*, No. 08-cv-03601-HB-FM (S.D.N.Y.) ($85 million recovery); *City of Roseville Employees' Retirement System v. EnergySolutions, Inc.*, No. 09-cv-08633-JGK (S.D.N.Y.) ($26 million recovery); and *City of Pontiac General Employees' Retirement System v. Lockheed Martin Corp.*, No. 11-cv-05026-JSR (S.D.N.Y.) ($19.5 million recovery).

As demonstrated by their firm resume, Saxena White also has extensive experience in successfully prosecuting complex litigation on behalf of shareholders and is lead or co-lead counsel in major securities class and derivative actions nationwide, including in this District. In terms of the benefits conferred upon Saxena White's clients, the firm has achieved resounding successes on behalf of shareholders nationwide as Saxena White's efforts in investor-related litigations have resulted in significant monetary benefits and corporate governance reforms. *See*, *e.g.*, *In re Bank of America Corp. Sec., Deriv. and ERISA Litig.*, 1:09-md-2058-PKC (S.D.N.Y.) ($62.5 million recovery on behalf of nominal defendant and adoption of significant corporate governance reforms); *Central Laborers' Pension Fund v. SIRVA, Inc.*, 04 C 7644 (N.D. Ill.) ($53.3 million recovery and important corporate governance reforms); *City Pension Fund for Firefighters and Police Officers in the City of Miami Beach v. Aracruz Celulose, S.A., et al.*, No. 1:08-cv-23317-JAL (S.D. Fla. July 17, 2013) ($37.5 million settlement for shareholders in a securities fraud action against Aracruz Celulose, S.A.); *In re Sadia S.A. Securities Litigation*, 08-cv-09528-SAS (S.D.N.Y.) ($27 million settlement for shareholders in a securities fraud action against Sadia, S.A.). In sum, Saxena White has the skill and experience that will enable it to prosecute this action effectively and expeditiously.

Accordingly, the Court should approve Atlanta Police and Firefighters' selection of Robbins Geller and Saxena White as Lead Counsel for the Class.

## IV.  CONCLUSION

For the foregoing reasons, Atlanta Police and Firefighters respectfully request that the Court: (1) consolidate the Actions; (2) appoint Atlanta Police and Firefighters as Lead Plaintiff for the Class; and (3) approve Atlanta Police and Firefighters' selection of Robbins Geller and Saxena White as Lead Counsel for the Class.

DATED:  August 24, 2015

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
MARIO ALBA, JR.
ANDREW L. SCHWARTZ

*/s/ David A. Rosenfeld*
DAVID A. ROSENFELD

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com
malba@rgrdlaw.com
aschwartz@rgrdlaw.com

SAXENA WHITE P.A.
JOSEPH E. WHITE, III
LESTER R. HOOKER
5200 Town Center Circle, Suite 601
Boca Raton, FL  33486
Telephone: 561/394-3399
561/394-3382 (fax)
jwhite@saxenawhite.com
lhooker@saxenawhite.com

*[Proposed] Lead Counsel for Plaintiff*

- 11 -

CERTIFICATE OF SERVICE

I, David A. Rosenfeld, hereby certify that on August 24, 2015, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.

*/s/ David A. Rosenfeld*
David A. Rosenfeld