### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GENE NIKSICH, Individually and on Behalf of All Others Similarly Situated, | Civil Action No.: 1:15-cv-04860-PGG |
| Plaintiff, | |
| v. | |
| ICONIX BRAND GROUP, INC., NEIL COLE, WARREN CLAMEN, and JEFF LUPINACCI, | |
| Defendants. | |
| LORENZO LAZARO, Individually and on Behalf of All Others Similarly Situated, | Civil Action No.: 1:15-cv-04981-PGG |
| Plaintiff, | |
| v. | |
| ICONIX BRAND GROUP, INC., NEIL COLE, WARREN CLAMEN, and JEFF LUPINACCI, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION BY INTERNATIONAL UNION OF OPERATING ENGINEERS OF EASTERN PENNSYLVANIA AND DELAWARE PENSION PLAN FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL**

Movant, International Union of Operating Engineers of Eastern Pennsylvania and Delaware Pension Plan ("Operating Engineers" or "Movant"), respectfully submits this Memorandum of Law in support of its Motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), and Rule 42 of the Federal Rules of Civil Procedure, for an Order: (1) consolidating the above-captioned actions; (2) appointing Operating Engineers as Lead Plaintiff on behalf of investors who purchased or otherwise acquired securities of Iconix Brand Group, Inc. ("Iconix" or the "Company") during the period of February 20, 2013 and April 17, 2015, inclusive (the "Class Period"); (3) approving Lead Plaintiff's selection of Shepherd, Finkelman, Miller & Shah, LLP ("SFMS") as Lead Counsel; and (4) granting such other and further relief as the Court may deem just and proper.

## I.  INTRODUCTION

To the best of its knowledge, information, and belief, Operating Engineers has the "largest financial interest" in the above-captioned securities class actions, and otherwise meets the requirements of the PSLRA.[1] And as an institutional investor, Operating Engineers is precisely the type of investor that Congress had in mind when it passed the PSLRA, and is uniquely qualified to serve as Lead Plaintiff on behalf of the class (the "Class") proposed in the above-captioned actions. The PSLRA's legislative history reflects that it was intended "to increase the likelihood that institutional investors will serve as lead plaintiffs" because, *inter*

---

[1] Movant has estimated losses in excess of $129,697.10 arising from its purchase of the common stock of Iconix during the Class Period. Movant has attached its loss calculation as Exhibit "C" to the accompanying Declaration of Laurie Rubinow ("Rubinow Declaration" or "Rubinow

*alia*, such investors are presumed to "represent the interests of the plaintiff class more effectively than class members with small amounts at stake." H.R. Rep. No. 104-369, at 34 (1995); *see Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007) (PSLRA "aimed to increase the likelihood that institutional investors – parties more likely to balance the interests of the class with the long-term interests of the company – would serve as lead plaintiffs"). Thus, appointment of Operating Engineers as Lead Plaintiff in this securities action is appropriate, not only because Movant meets all of the prerequisites of the PSLRA, but also because such an appointment will fulfill the goals of that statutory scheme.

As demonstrated below and pursuant to the PSLRA, Movant is the "most adequate" plaintiff to represent those who purchased or otherwise acquired Iconix securities during the Class Period, and it should be appointed as Lead Plaintiff. In addition, Movant has selected and retained SFMS to serve as Lead Counsel, a law firm with extensive experience in prosecuting securities fraud and other complex litigation matters. Accordingly, Operating Engineers' selection of counsel should be approved.

## II.    SUMMARY OF ALLEGATIONS

Presently pending before the Court are two related securities class action lawsuits (the "Actions")[2] brought on behalf of those persons or entities that purchased or otherwise acquired the common stock of Iconix during the Class Period. Both Actions allege violations of Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78(j)(b) and 78t(a)) and Rule 10b-5

---

Decl.").
[2]*Gene Niksich v. Iconix Brand Group, Inc., et al.*, No. 1:15-cv-04860-PGG (S.D.N.Y.) (the "*Niksich* Action") was filed on June 23, 2015, while *Lorenzo Lazaro v. Iconix Brand Group, Inc., et al.*, No. 1:15-cv-04981-PGG (S.D.N.Y.) (the "*Lazaro* Action") was filed on June 25, 2015.

promulgated thereunder (17 C.F.R. § 240.10b-5) against Iconix, as well as the following individuals, who occupied senior management positions during the Class Period: Neil Cole ("Cole"), Chief Executive Officer and Director at all relevant times; Warren Clamen ("Clamen"), Chief Financial Officer of Iconix until May 18, 2014; and Jeff Lupinacci ("Lupinacci"), Chief Financial Officer of Iconix from April 7, 2014 through March 30, 2015 (collectively with Iconix, "Defendants").

Iconix, a Delaware corporation headquartered in New York, New York, is a brand management company and owner of a diversified portfolio of global consumer brands across men's and women's fashion, sports, entertainment, and home. Complaint, ¶ 24.[3] The Company's purported business strategy is to maximize the value of its brands primarily through strategic licenses and joint venture partnerships around the world, as well as to grow the portfolio of brands through strategic acquisitions. *Id.*

The Complaint alleges that Defendants knowingly but repeatedly and materially overstated the Company's earnings, revenues, and financial position throughout the Class Period. For example, on February 20, 2013, Defendants issued a press release which announced the Company's financial results for the quarter and year ended December 31, 2012. *Id.*, ¶ 25. The press release stated, in part, the "[f]ree cash flow attributable to Iconix for 2012 was approximately $180.5 million as compared to $179.2 million for the prior year." *Id.* The same press release also represented that the "net income attributable to Iconix for 2012 was approximately $109.4 million." *Id.* These and other figures were reaffirmed by the Company's Quarterly Report, which was filed with the Securities and Exchange Commission ("SEC") on

---

[3]The citations are to the complaint filed in the *Niksich* Action, Dkt. No. 1 (the "Complaint").

Form 10-Q on February 20, 2013.  *Id.*, ¶ 26.  This pattern continued throughout the Class Period; Defendants would periodically issue press releases touting the Company's performance with specific numbers representing its liquidity, financial health, and growth and potential, which Defendants would affirm with an SEC filing, through March 2, 2015.  *Id.*, ¶¶ 27-42.

These Class Period statements and representations were materially false and misleading because, *inter alia*, Defendants underreported the cost basis of Iconix's brands, the Company engaged in irregular accounting practices related to the booking of its joint venture revenues and profits, free-cash flow, and organic growth, so that, as a result, the Company's earnings and revenues were overstated and, also as a result of the foregoing, Defendants' statements about Iconix's business, operations, and prospects during the Class Period were false and misleading and/or lacked a reasonable basis.  *Id.*, ¶ 43.  Defendants' false and misleading statements had the effect of causing shares of Iconix to trade at artificially inflated prices during the Class Period. ¶¶ 55-57.  When the truth was revealed concerning Iconix's financial status and accounting practices, its share price declined $6.62 per share, or over 20% of its previous-day closing share price, to close on April 20, 2015 at $25.41 per share, on unusually heavy volume.  *Id.*, ¶¶ 44-48.  Furthermore, the Complaint alleges that Defendants knew of the falsity of the statements and representations at the time they were issued to the investing public.  *Id.*, ¶ 60.

### III. ARGUMENT

#### A. The Actions Should Be Consolidated For All Purposes

Consolidation is appropriate where there are actions involving common questions of law or fact. Fed. R. Civ. P. 42(a).  The Court has broad discretion under Rule 42(a) to consolidate cases pending within its District.  *See Sallustro v. CannaVest Corp.*, No. 14 CIV. 2900 PGG,

2015 WL 1262253, at *1 (S.D.N.Y. Mar. 19, 2015); *In re UBS Auction Rate Sec. Litig.*, No. 08 CIV. 2967 (LMM), 2008 WL 2796592, at *1 (S.D.N.Y. July 16, 2008); *Albert Fadem Trust v. Citigroup Inc.*, 239 F. Supp. 2d 344, 347 (S.D.N.Y. 2002).  The Actions pending before the Court each assert class claims for violations of the Exchange Act on behalf of those who purchased or otherwise acquired Iconix securities during the Class Period.  The Actions name the same Defendants (Iconix, Cole, Clamen, and Lupinacci), and both involve the same factual and legal issues–namely whether, during the Class Period, the plaintiff and other investors purchased or otherwise acquired Iconix publicly-traded securities at prices which were artificially inflated as a result of Defendants' false and misleading statements, and whether Defendants' acts violate Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5. Accordingly, consolidation is appropriate here.  *See, e.g.*, *Weiss v. Friedman, Billings, Ramsey Group, Inc.*, No. 05-cv-04617 (RJH), 2006 WL 197036, at *1 (S.D.N.Y. Jan. 25, 2006) ("consolidation is particularly appropriate in the context of securities class actions if the complaints are based on the same public statements and reports and defendants will not be prejudiced.").  Moreover, consolidation will result in substantial efficiencies for the Court and the parties. Therefore, the above-captioned Actions should be consolidated for all purposes.

    **B.**    **Movant Is The Most Adequate Applicant And Should Be Appointed Lead Plaintiff**

        **1.**    <u>**Compliance With The Notice And Filing Provisions Of The PSLRA**</u>

The PSLRA establishes a procedure that governs the appointment of a lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §§78u-4(a)(1) and (a)(3)(B)(I). *See generally In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. MDL 1500, 2003 WL

102806, at *1 (S.D.N.Y. Jan. 10, 2003) (discussing the PSLRA's "three-step" process for identifying the lead plaintiff).  Pursuant to this procedure, the plaintiff who files the initial action must publish a notice to the class within 20 days of filing the action.  This notice must inform class members of their right to file a motion for appointment as lead plaintiff.  *See* 15 U.S.C. §78u-4(a)(3)(A)(I). Within 60 days of publishing the notice, any person or group of persons who are members of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action.  *See* 15 U.S.C. §§78u-4(a)(3)(A) and (B).

      Here, notice of the filing of this action was published on June 23, 2015, following the filing of the Complaint.  *See* Exhibit "A" to the Rubinow Decl., submitted herewith.[4]  Accordingly, the time period in which Class members may move to be appointed Lead Plaintiff in this case expires on August 24, 2015.  *See* 15 U.S.C. §78u- 4(a)(3)(A) and (B). Movant now timely moves this Court to be appointed Lead Plaintiff on behalf of all members of the proposed Class.

      The Certification of Operating Engineers, which is attached to the Rubinow Declaration as Exhibit "B," states that a representative of Operating Engineers, duly authorized to prosecute these claims, has reviewed the allegations of the Complaint and that Movant is willing to serve as a representative on behalf of the Class.  In addition, Movant has selected and retained competent counsel to represent it and the Class.  SFMS's firm résumé is attached to the Rubinow Declaration as Exhibit "D." Accordingly, Movant has satisfied the individual requirements of 15

---

[4] The notice was issued over *BusinessWire*, which has been found to satisfy the PSLRA's notice requirement.  15 U.S.C. § 78u-4(a)(3)(A)(i); *see, e.g.*, *Lopez v. CTPartners Executive Search Inc.*, No. 15 CIV. 1476 PAE, 2015 WL 2431484, at *1 (S.D.N.Y. May 18, 2015).

U.S.C. §78u-4(a)(3)(B) and is entitled to have its Motion for Appointment as Lead Plaintiff granted, and its selection of SFMS as Lead Counsel approved by the Court.

### 2. Operating Engineers Suffered The Largest Loss Of Any Other Movant

The PSLRA provides that the Court shall consider any timely motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the Court determines to be most capable of adequately representing the interests of class members.  *See* 15 U.S.C. § 78u-4(a)(3)(B).  In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this [Act] is the person or group of persons that
>
> (aa) has either filed the complaint or made a motion in response to a notice...;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii); *see, e.g., Pipefitters Local No. 636 Defined Ben. Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 190 (S.D.N.Y. 2011).  Though the "PSLRA does not specify a method for calculating which plaintiff has the 'largest financial interest,'" "[m]any courts in this District, however, have determined a prospective lead plaintiff's financial interest by looking to '(1) the number of shares purchased; (2) the number of net shares purchased; (3) total net funds expended by the plaintiff[ ] during the class period; and (4) the approximate losses suffered by the plaintiff.'"  *Sallustro*, 2015 WL 1262253, at *3 (citations omitted).  Furthermore, "[m]ost courts agree that the largest loss is the critical ingredient in determining the largest financial interest and outweighs net shares purchased and net expenditures." *Id.* (citations omitted).

Here, as reflected in its Certification (Exhibit "B" to the Rubinow Declaration), during the Class Period, Operating Engineers purchased a total of 11,650 shares of the Company's common stock during the Class Period.  So after subtracting for the value of shares retained, Movant has suffered estimated losses in excess of $129,697.10.[5]  This demonstrates that Operating Engineers has a significant financial interest in the outcome of these Actions.  To the best of Movant's knowledge, there is no other applicant seeking appointment as Lead Plaintiff that has a larger financial interest.  Therefore, Operating Engineers satisfies all of the PSLRA's prerequisites for appointment as lead plaintiff in this action, and should be appointed as Lead Plaintiff pursuant to 15 U.S.C. §78u-4 (a)(3)(B).

### 3. No Grounds Exist To Challenge The Typicality Of Operating Engineers' Claims And Its Adequacy As Lead Plaintiff

According to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." But "[t]ypicality and adequacy of representation are the only provisions [of Rule 23] relevant to a determination of lead plaintiff under the PSLRA." *Sallustro*, 2015 WL 1262253, at *9.  And "[a]t this stage of the litigation, a prima facie showing" is sufficient.  *In re KIT Digital, Inc. Sec. Litig.*, 293 F.R.D. 441, 445 (S.D.N.Y. 2013).

"Typicality is established where each class member's claim 'arises from the same course

---

[5] Under the PSLRA, losses are calculated as the difference between the purchase or sale price paid and the mean trading price over a 90-day period beginning after the close of the class period.  *See* 15 U.S.C. § 78u-4(e)(1). Here, the close of the Class Period in the first-filed Complaint is April 17, 2015, so the 90-day period ended on July 16, 2015.  The mean, or average, closing price for Iconix common stock from April 17, 2015 to July 16, 2015 is $26.19.  A chart reflecting the calculations of the Operating Engineers' losses based on this mean closing

of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Freudenberg v. E*Trade Fin. Corp.*, Nos. 07 Civ. 8538, *et al.*, 2008 WL 2876373, at *5 (S.D.N.Y. July 16, 2008) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). But "[t]he lead plaintiff's claims 'need not be identical to the claims of the class to satisfy the [preliminary showing of] typicality.'" *In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 436 (S.D.N.Y. 2008) (quotation omitted). Here, Operating Engineers satisfies the typicality requirement because, just like all other Class members, Movant purchased or otherwise acquired Iconix common stock during the Class Period, the prices at which those purchases were made were artificially inflated because of Defendants' materially false and misleading statements and/or omissions, and Operating Engineers suffered damages as a result of Defendants' conduct. Thus, Movant's claims arise out of the same course of events as those of other Class members and are typical.

"The adequacy requirement is satisfied where '(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy.'" *Sallustro*, 2015 WL 1262253, at *10 (quoting *Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007)). Here, Operating Engineers is an adequate representative of the Class. First, as discussed below, Movant's proposed Lead Counsel is highly qualified, experienced and able to conduct this complex litigation in a professional manner. Second, Operating Engineers' claim is typical of the other members of the Class, and there is no evidence of any antagonism between Operating Engineers and the Class.

---

price during the Class Period is attached as Exhibit "C" to the Rubinow Declaration.

And third, Operating Engineers' substantial damages as a result of its purchases of Iconix common stock ensures that Movant will be motivated to vigorously prosecute this case on behalf of the Class.  Thus, Movant satisfies the typicality and adequacy requirements of Rule 23 for the purposes of this Motion.

### C. The Court Should Approve Movant's Choice of Counsel

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v), Movant shall, subject to Court approval, select and retain counsel to represent the class it seeks to represent.  *Sallustro*, 2015 WL 1262253, at *10.  Operating Engineers has selected SFMS to serve as Lead Counsel in this case. As shown by its résumé (Exhibit "D" to the Rubinow Declaration), SFMS has substantial experience in the prosecution of shareholder, securities and other complex litigation, and has the resources necessary to efficiently conduct this litigation.  Accordingly, the Court should approve Operating Engineers' selection of Lead Counsel.

## IV. CONCLUSION

For all of the foregoing reasons, Movant respectfully requests that the Court: (i) consolidate the Actions; (ii) appoint Operating Engineers as Lead Plaintiff in this consolidated action; and (iii) approve the Movant's selection of Shepherd, Finkelman, Miller & Shah, LLP to serve as Lead Counsel.

Dated: August 24, 2015

Respectfully submitted,

SHEPHERD, FINKELMAN, MILLER & SHAH, LLP

 /s/ Laurie Rubinow
Laurie Rubinow (LR6637)
875 Third Avenue, Suite 800
New York City, NY 10022
Telephone: (212) 419-0156
Facsimile: (866) 300-7367
Email: lrubinow@sfmslaw.com

James E. Miller
SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
65 Main St.
Chester, CT 06412
Telephone: (860) 526-1100
Facsimile: (866) 300-7367
Email: jmiller@sfmslaw.com

Eric L. Young
SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
35 East State St.
Media, PA 19063
Telephone: (610) 891-9880
Facsimile: (866) 300-7367
Email: eyoung@sfmslaw.com

**Attorneys for Movant,**
**International Union of Operating Engineers of Eastern Pennsylvania and Delaware Pension Plan**