UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IN RE: ICONIX BRAND GROUP, INC., et al. :  15 Civ. 4860 (PGG)
:
:  **ECF Case**
:
This Document Relates To All Actions    :
:  **Electronically Filed**
:
:

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' JOINT MOTION TO
DISMISS THE SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

<table>
<tr><td>SKADDEN, ARPS, SLATE,<br>  MEAGHER & FLOM LLP<br>Jay B. Kasner<br>Scott D. Musoff<br>Alexander C. Drylewski<br>Four Times Square<br>New York, New York 10036<br>Phone: (212) 735-3000</td><td>FRIEDMAN KAPLAN SEILER<br>  & ADELMAN LLP<br>Eric Corngold<br>John N. Orsini<br>7 Times Square<br>New York, New York 10036<br>Phone: (212) 833-1100</td></tr>
<tr><td>*Attorneys for Iconix Brand Group, Inc.<br>  and F. Peter Cuneo*</td><td>*Attorneys for David Blumberg*</td></tr>
<tr><td>SHEARMAN & STERLING LLP<br>John A. Nathanson<br>Agnès Dunogué<br>599 Lexington Avenue<br>New York, New York 10022<br>Phone: (212) 848-4000</td><td>PAUL, WEISS, RIFKIND,<br>  WHARTON & GARRISON LLP<br>Lorin L. Reisner<br>Richard A. Rosen<br>Richard C. Tarlowe<br>1285 Avenue of the Americas<br>New York, New York 10019<br>Phone: (212) 373-3000</td></tr>
<tr><td>*Attorneys for Warren Clamen*</td><td>*Attorneys for Neil Cole*</td></tr>
</table>

*Counsel information continued on next page*

AKIN GUMP STRAUSS
 HAUER & FELD LLP
Stephen M. Baldini
Carolyn Mattus Cornell
M. Christine Slavik
One Bryant Park
New York, New York 10036
Phone: (212) 872-1000

*Attorneys for David K. Jones*

FRANKFURT KURNIT
 KLEIN & SELZ PC
Brian E. Maas
Andrew J. Ungberg
488 Madison Avenue
New York, New York 10022
Phone: (212) 980-0120

*Attorneys for Jeff Lupinacci*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. iii

PRELIMINARY STATEMENT ...................................................................................... 1

SUPPLEMENTAL STATEMENT OF FACTS ................................................................ 5

    A.    Plaintiffs File The CAC And The Court Grants Defendants' Motion To Dismiss Based On Failure To Plead Scienter ......................................... 5

    B.    Plaintiffs File The Second Amended Complaint ................................. 7

ARGUMENT ................................................................................................................. 9

THE SAC SHOULD BE DISMISSED WITH PREJUDICE ........................................ 9

I.    PLAINTIFFS FAIL TO ALLEGE A STRONG INFERENCE OF SCIENTER ............... 9

    A.    Plaintiffs Still Fail To Allege "Conscious Misbehavior Or Recklessness" Or "Motive And Opportunity" As To Any Defendant ........................... 9

    B.    Plaintiffs' New Allegations Are Insufficient To Give Rise To A Strong Inference Of Defendants' Scienter ..................................................... 12

        1.    Plaintiffs' New Allegations Regarding BDO Are Insufficient ............... 12

        2.    Plaintiffs' New Allegations Regarding The JV Transactions Are Insufficient .................................................................................... 14

            (a)    Control Over The JVs ................................................... 15

            (b)    Ability To Repay ........................................................... 15

            (c)    Recourse For Missed Payments ...................................... 18

            (d)    Deconsolidation Of The JVs ........................................ 18

II.    PLAINTIFFS STILL FAIL TO PLEAD THAT MANY OF THE ALLEGED MISSTATEMENTS ARE MATERIALLY FALSE AND MISLEADING .................... 19

III.    PLAINTIFFS STILL FAIL TO PLEAD LOSS CAUSATION FOR MANY OF THE ALLEGED MISSTATEMENTS .................................................................. 22

    A.    Plaintiffs Do Not Plead Loss Causation For The 2011 and 2012 Financial Statements ..................................................................................... 22

B.     Plaintiffs Do Not Allege Loss Causation With Respect To Certain
Accounting Issues ...............................................................................................23

IV.    PLAINTIFFS STILL FAIL TO PLEAD CONTROL PERSON LIABILITY .................25

CONCLUSION.............................................................................................................................25

## **TABLE OF AUTHORITIES**

### **CASES**

*Alaska Laborer Employer Retirement Fund v. Scholastic Corp.*,
    No. 07 Civ. 7402 (GBD), 2010 WL 3910211 (S.D.N.Y. Sept. 30, 2010)........................22

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)............................................................................................5, 25

*Barrett v. PJT Partners Inc.*,
    No. 16-CV-2841 (VEC), 2017 WL 3995606 (S.D.N.Y. Sept. 8, 2017)..........................21

*In re Blue Earth, Inc. Securities Class Action Litigation*,
    No. CV 14-08263-DSF (JEMx), 2015 WL 12001274 (C.D. Cal. Nov. 3, 2015)..............24

*Board of Trustess of City of Ft. Lauderdale General Employees' Retirement System v.*
    *Mechel OAO*, 811 F. Supp. 2d 853 (S.D.N.Y. 2011)............................................................14

*In re Bristol-Myers Squibb Securities Litigation*,
    312 F. Supp. 2d 549 (S.D.N.Y. 549 (S.D.N.Y. 2004) ..................................................11, 17

*Central States, Southeast & Southwest Areas Pension Fund v. Federal Home Loan*
    *Mortgage Corp.*, 543 F. App'x 72 (2d Cir. 2013) ......................................................23, 24

*In re China Organic Securities Litigation*,
    No. 11 Civ. 8623(JMF), 2013 WL 5434637 (S.D.N.Y. Sept. 30, 2013)...........................12

*City of Brockton Retirement System v. Avon Products, Inc.*,
    No. 11 Civ. 4665 (PGG), 2014 WL 4832321 (S.D.N.Y. Sept. 29, 2014) ..............5, 12, 25

*City of Monroe Employees' Retirement System v. Hartford Financial Services Group,*
    *Inc.*, No. 10 Civ. 2835(NRB), 2011 WL 4357368 (S.D.N.Y. Sept. 19, 2011)..................11

*City of Omaha, Nebraska Civilian Employees' Retirement System v. CBS Corp.*,
    679 F.3d 64 (2d Cir. 2012)................................................................................................10

*Cortina v. Anavex Life Sciences Corp.*,
    No. 15-CV-10162 (JMF), 2016 WL 7480415 (S.D.N.Y. Dec. 29, 2016) ........................21

*In re DNTW Chartered Accountants Securities Litigation*,
    172 F. Supp. 3d 675 (S.D.N.Y. 2016), *aff'd*, 666 F. App'x 78 (2d Cir. 2016)...................9

*In re DNTW Chartered Accountants Securities Litigation*,
    96 F. Supp. 3d 155 (S.D.N.Y. 2015)................................................................................13

*Dura Pharmaceuticals, Inc. v. Broudo*,
    544 U.S. 336 (2005)...................................................................................4, 22

*Fila v. Pingtan Marine Enterprise Ltd.*,
    195 F. Supp. 3d 489 (S.D.N.Y. 2016)....................................................24

*Friedman v. JP Morgan Chase & Co.*,
    No. 15-CV-5899 (JGK), 2016 WL 2903273 (S.D.N.Y. May 18, 2016) ...........................5

*Fries v. Northern Oil & Gas, Inc.*,
    No. 16 Civ 6543 (ER) (S.D.N.Y. Jan 11, 2018) ...........................................11

*In re Iconix Brand Group, Inc.*,
    No. 15 Civ. 4860 (PGG), 2017 WL 4898228 (S.D.N.Y. Oct. 25, 2017).................. passim

*Janus Capital Group, Inc. v. First Derivative Traders*,
    131 S. Ct. 2296 (2011)...........................................................................21

*Kinzler v. First NBC Bank Holding Co.*,
    Civ. A. No. 16-4243, 2016 WL 4496764 (E.D. La. Aug. 26, 2016) ...........................10, 21

*Lentell v. Merrill Lynch & Co.*,
    396 F.3d 161 (2d Cir. 2005).............................................................22, 24

*In re Lions Gate Entertainment Corp. Securities Litigation*,
    165 F. Supp. 3d 1 (S.D.N.Y. 2016) .........................................................24

*Loos v. Immersion Corp.*,
    762 F.3d 880 (9th Cir. 2014) ..................................................................24

*Masters v. GlaxoSmithKline*,
    271 F. App'x 46 (2d Cir. 2008) ...............................................................23

*Meyer v. Greene*,
    710 F.3d 1189 (11th Cir. 2013) ...........................................................24, 25

*Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*,
    135 S. Ct. 1318 (2015)...........................................................................4, 19

*Pacific Investment Management Co. LLC v. Mayer Brown LLP*,
    603 F.3d 144 (2d Cir. 2010).....................................................................21

*In re Philip Services Corp. Securities Litigation*,
    383 F. Supp. 2d 463 (S.D.N.Y. 2004).........................................................13

*Prime Mover Capital Partners L.P. v. Elixir Gaming Technologies, Inc.*,
    898 F. Supp. 2d 673 (S.D.N.Y. 2012) .......................................................................23, 25

*Querub v. Hong Kong*,
    649 F. App'x 55 (2d Cir. 2016) .................................................................................19

*In re Seadrill Limited Securities Litigation*,
    No. 14 Civ. 9642 (LGS), 2016 WL 3461311 (S.D.N.Y. June 20, 2016)....................19, 21

*Thomas v. Shiloh Industries, Inc.*,
    No. 15-cv-7449 (KMW), 2017 WL 1102664 (S.D.N.Y. Mar. 23, 2017) .........................10

*Tongue v. Sanofi*,
    816 F. 3d 199 (2d Cir. 2016)....................................................................................4, 19

*In re Weight Watchers International, Inc. Securities Litigation*,
    No. 14-cv-1997 (LAK), 2016 WL 2757760 (S.D.N.Y. May 11, 2016) ......................4, 20

*Wilamowsky v. Take-Two Interactive Software, Inc.*,
    818 F. Supp. 2d 744 (S.D.N.Y. 2011).......................................................................25

*Wilson v. Merrill Lynch & Co.*,
    671 F.3d 120 (2d Cir. 2011)......................................................................................5

*Wyche v. Advanced Drainage Systems, Inc.*,
    No. 15 CIV. 5955 (KPF), 2017 WL 971805 (S.D.N.Y. Mar. 10, 2017) ....................10, 21

## OTHER AUTHORITIES

Ernst & Young LLP, *Consolidation and the Variable Interest Model* (Sept. 2014) ....................20

Arie S. Wilgenburg, Professional Accounting Fellow, Office of the Chief Accountant,
    U.S. Securities and Exchange Commission, Remarks before the 2009 AICPA
    National Conference on Current SEC and PCAOB Developments (Dec. 7, 2009) ..........20

Defendants Iconix Brand Group, Inc. ("Iconix" or the "Company"), Neil Cole, Warren Clamen, Jeff Lupinacci, David Blumberg, David K. Jones and F. Peter Cuneo (the "Individual Defendants," and together with Iconix, the "Defendants"), respectfully submit this memorandum of law in support of their joint motion to dismiss the Second Consolidated Amended Class Action Complaint, dated November 14, 2017 ("SAC").[1]

## PRELIMINARY STATEMENT

On October 25, 2017, this Court dismissed Plaintiffs' Consolidated Amended Class Action Complaint ("CAC"), which asserted claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), on the ground that Plaintiffs' "factual allegations, considered together, are not sufficient to raise a strong inference of scienter." *In re Iconix Brand Grp., Inc.*, No. 15 Civ. 4860 (PGG), 2017 WL 4898228, at *19 (S.D.N.Y. Oct. 25, 2017). The Court concluded that

> the [CAC's] allegations — which are entirely circumstantial and do not rely on any internal documents or confidential witnesses — support a more cogent and compelling inference of <u>non-fraud</u>: that Defendants attempted to comply with applicable accounting standards; that Defendants fully cooperated with the Company's outside auditors and disclosed the relevant accounting judgments in their public filings; that the accounting decisions at issue involve matters of judgment that were not — at the time — flagged as improper by the outside auditors or otherwise disapproved of by the outside auditors . . . ; [and] that the Company took steps to correct the errors.

*Id.* (emphasis added). The Court granted Plaintiffs' request that they be permitted to submit an amended complaint to attempt to plead a legally cognizable claim. *Id.* at *20.

Plaintiffs responded by filing the SAC, which does not add a single particularized fact

---

[1] Unless otherwise indicated, all capitalized terms shall have the same meanings ascribed to them in Defendants' previous joint motion to dismiss (ECF No. 103 ("Def. MTD")). A true and correct copy of the SAC is attached as Exhibit A to the Declaration of Scott D. Musoff dated February 2, 2018, exhibits to which are cited herein as "Ex." The remaining individual defendant, Seth Horowitz, has filed a separate memorandum of law in support of dismissal.

regarding Defendants' scienter or address any of the numerous pleading deficiencies previously identified by the Court.  In response to the Court's holding that Plaintiffs' theory of fraud failed because Iconix's "accounting judgments were subject to audit" by its independent auditor, BDO USA, LLP ("BDO"), throughout the Class Period, *id.* at *18-19, Plaintiffs now desperately and conclusorily add BDO as a defendant.[2]  But the allegations against BDO not only fail to add any new facts as to <u>Defendants</u>, they are also facially implausible in their own right, thus making Plaintiffs' newly packaged theory of fraud even <u>less cogent</u> than the one the Court has already rejected.  The SAC, like its predecessor, fails to plead a securities fraud claim and thus should be dismissed with prejudice for at least the following separate and independent reasons:

**<u>Plaintiffs Still Fail To Allege A Strong Inference Of Fraudulent Intent (<i>Infra</i> § I)</u>:**

First, for the same reasons previously recognized by the Court, the SAC falls far short of pleading facts giving rise to a strong inference that any Defendant knew the challenged accounting decisions were incorrect at the time they were made.  The Court's ruling was clear that the CAC "cite[d] no internal reports, documents or communications that shed light on Defendants['] knowledge of or conduct concerning the Company's accounting practices" (*infra* pp. 6, 9), and the SAC does not offer any allegations to rectify this shortcoming.  Similarly, while the Court rejected Plaintiffs' previous attempts to plead Defendants' "motive and opportunity" to commit fraud, Plaintiffs rely upon these very same inadequate allegations without any attempt to remedy their deficiencies.

Although Plaintiffs now allege for the first time that BDO "conspired" with Defendants

---

[2]  While Plaintiffs refer to BDO throughout the SAC as "Defendant BDO" (*see, e.g.*, SAC n.1), they omit BDO from any of the Counts, which are asserted solely against the "Defendants."  (*Id.*) BDO has submitted a separate memorandum of law in support of its motion to dismiss the SAC, which Defendants incorporate by reference herein.

"to fraudulently conceal the true nature" of the Company's joint ventures (SAC ¶ 9) — despite previously suggesting that Defendants had perpetrated "the same fraud" on BDO as they did the investing public (*see* Pl. Opp. Br. at 32) — this is patently insufficient.  (*Infra* § I.B.1.)  Other than claiming that BDO collected fees from Iconix in exchange for its professional auditing services (SAC ¶ 406) — a conclusory allegation that could be levied against any independent auditor — Plaintiffs do not offer any motive whatsoever for BDO to aid in Defendants' alleged scheme or any logical reason why BDO would "conspire" to conceal anything.  Rather than support Plaintiffs' fraud claim, the SAC directly undermines any inference of fraud because it alleges that BDO was fully informed and substantially involved in Iconix's accounting decisions regarding whether to consolidate the JVs under Accounting Standards Codification ("ASC") 810, and continued to agree with the Company's decisions, as reflected in Iconix's detailed and lengthy written correspondence with the Securities and Exchange Commission Division of Corporation Finance ("SEC") throughout the Class Period.  (*Infra* pp. 8-9.)

Similarly, Plaintiffs' new allegations that certain of the Company's challenged joint venture transactions ("JV Transactions") were "sham transactions designed to generate instant 'paper' revenues" are unsupported by any particularized facts and fall far short of establishing a strong inference of scienter.  (*Infra* § I.B.2.)  Significantly, Plaintiffs have not alleged (nor can they) that any material details of the JV Transactions were ever withheld from BDO or the SEC in Iconix's "public back-and-forth with the SEC" during the Class Period.  (*See, e.g.*, SAC ¶¶ 95-97.)  This fatally undermines any inference of scienter.

**Plaintiffs Still Fail To Allege Actionable Misstatements (*Infra* § II):**  Second, although the Court did not previously reach the issue (and need not reach it with respect to the SAC), the accounting judgments that Plaintiffs challenge are non-actionable matters of opinion

under *Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*, 135 S. Ct. 1318, 1325-28 (2015), and *Tongue v. Sanofi*, 816 F.3d 199, 209-10 (2d Cir. 2016). Plaintiffs fail to plead any facts to support the conclusion that Defendants did not actually believe these complex, highly-subjective opinions at the time they were communicated, and thus any claims as to these statements necessarily fail. *See In re Weight Watchers Int'l, Inc. Sec. Litig.*, No. 14-cv-1997 (LAK), 2016 WL 2757760, at *5 n.43 (S.D.N.Y. May 11, 2016) ("Where the speaker's opinion or belief is genuine, a bare allegation that her opinion or belief ultimately proved incorrect is not enough to survive a motion to dismiss after *Omnicare*.").

**Plaintiffs Still Fail To Adequately Plead Loss Causation (*Infra* § III):** Third, Plaintiffs fail to meet their burden of pleading loss causation — *i.e.*, that the alleged material misstatements caused their purported economic harm. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005). While Plaintiffs claim that the Company's two Restatements revealed that Defendants had misstated Iconix's financial results for the years 2011 to 2015, they allege only that the First Restatement occurred during the Class Period and resulted in a decline in the Company's stock price. But the First Restatement encompassed just three specific accounting issues relating to certain reporting periods,[3] and said nothing about the other accounting judgments and reporting periods upon which Plaintiffs base their claims. The Second Restatement, which encompassed Iconix's accounting for joint ventures and trademark sales for certain reporting periods, did not occur until February 2016, and Plaintiffs do not allege any drop

---

[3] Specifically, the First Restatement addressed only (i) the classification of contractually obligated expenses, retail support and other costs; (ii) revenue recognition relating to certain license agreements; and (iii) estimation of accruals related to retail support for certain license agreements. (Iconix 8-K, ECF No. 104-11.) In connection with these issues, the First Restatement restated the financial results for (i) the fourth quarter and annual results of 2013, (ii) the 2014 fiscal year and each quarterly period thereof, and (iii) the first and second quarters of 2015. (*Id.*)

in stock price as a result of these disclosures (which occurred months after the end of the Class

Period).  As a result, Plaintiffs cannot meet their burden of pleading loss causation as to these

accounting issues and time periods.

**Plaintiffs' Control Person Claims Fail (*Infra* § IV):**  Finally, Plaintiffs' control person

claims must be dismissed because Plaintiffs have failed to plead sufficient facts to allege a

primary violation of the securities laws, *see Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 139

(2d Cir. 2011), or that any of the Individual Defendants culpably participated in the alleged fraud,

*see ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007).

*  *  *  *

In short, Plaintiffs have failed to remedy any of the myriad pleading deficiencies

previously identified by the Court.  Having now been afforded multiple opportunities to plead a

viable securities fraud claim, Plaintiffs' SAC should be dismissed in its entirety with prejudice.

## SUPPLEMENTAL STATEMENT OF FACTS[4]

**A.     Plaintiffs File The CAC And The Court Grants**
**Defendants' Motion To Dismiss Based On Failure To Plead Scienter**

On May 13, 2016, Plaintiffs filed the CAC, asserting claims under Sections 10(b) and

20(a) of the Exchange Act, which Defendants moved to dismiss.  (ECF Nos. 62, 103.)  On

October 25, 2017, the Court dismissed the CAC in its entirety on numerous grounds.  First, the

---

[4]  To avoid burdening the Court with duplicative filings, Defendants incorporate by reference the Statement of Facts contained in their previous Motion to Dismiss (ECF No. 103) and the Court's decision dismissing the CAC.  The additional facts set forth herein are drawn from the factual allegations of the SAC, "together with those 'documents . . . incorporated in it by reference' and 'matters of which judicial notice may be taken.'"  *Wilson*, 671 F.3d at 123 (citation omitted); *Friedman v. JP Morgan Chase & Co.*, No. 15-cv-5899 (JGK), 2016 WL 2903273, at *2 (S.D.N.Y. May 18, 2016), *aff'd*, 689 F. App'x 39 (2d Cir. 2017).  The Court may consider any document "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint."  *City of Brockton Ret. Sys. v. Avon Prods., Inc.*, No. 11 Civ. 4665 (PGG), 2014 WL 4832321, at *12 (S.D.N.Y. Sept. 29, 2014).

Court held that Plaintiffs failed to plead any "motive and opportunity" for Defendants to commit fraud. *In re Iconix*, 2017 WL 4898228, at *17. In so doing, the Court rejected Plaintiffs' argument that scienter could be inferred from allegations that the Individual Defendants' compensation was "heavily tied" to the Company's financial performance. *Id.* at *14. The Court further held that there was nothing "unusual" about certain Individual Defendants' personal stock sales, concluding that any inference of fraud was undermined by the fact that "only two of the remaining six officer-Defendants [were] alleged to have sold stock," and for the Individual Defendants who did sell stock, their "net holdings of Iconix stock [actually] increased over the Class Period." *Id.* at *16.

Next, the Court held that Plaintiffs failed to plead "conscious misbehavior or recklessness" on the part of Defendants. *Id.* at *17-19. The Court emphasized that the CAC failed to identify any internal reports, documents, communications or confidential witnesses offering evidence of Defendants' knowledge that the challenged accounting decisions were incorrect at the time they were made. *Id.* at *18-19. The Court held that the Company's "public disclosures of its accounting practices and BDO's audits undermine such an inference," particularly given that Plaintiffs did not offer any "particularized allegations suggesting that Defendants gave Iconix's auditors incomplete information or prevented the auditors from detecting the allegedly 'basic' accounting errors." *Id.* at *19.

Having held that the CAC's "factual allegations, considered together, [were] not sufficient to raise a strong inference of scienter," the Court concluded, to the contrary, that Plaintiffs' allegations "support a more cogent and compelling inference of <u>non-fraud</u>." *Id.* (emphasis added). The Court permitted Plaintiffs to replead by November 14, 2017. *Id.* at *20.

B.      **Plaintiffs File The Second Amended Complaint**

On November 14, 2017, Plaintiffs filed the SAC, in which they continue to assert claims under Sections 10(b) and 20(a) of the Exchange Act.  In the SAC, Plaintiffs put forth two types of new allegations.  First, Plaintiffs purport to add Iconix's independent auditor, BDO, as a defendant (although they assert no counts against BDO (*see supra* n.2)).  Plaintiffs concede that BDO is "one of the largest audit firms in the world" and a "variable interest entity (VIE) expert," and was hired by the Company to audit its annual consolidated financial statements and internal controls and reviews of its financial statements.  (SAC ¶¶ 405, 406.)  Plaintiffs allege without any factual support that BDO "conspired" with Defendants "to fraudulently conceal the true nature" of the Company's joint ventures.  (*Id.* ¶¶ 8-9.)

Second, Plaintiffs allege that some (but not all) of the Company's JV Transactions "were sham transactions designed to generate instant 'paper' revenues so that the Company could conceal its worsening financial state."  (SAC ¶ 5.)  Specifically, Plaintiffs identify five JV Transactions in which Iconix's JV counterparty paid some percentage of the initial purchase price for the JV entity at the time of closing with the remainder to be paid in regular installments. (*See id.* ¶ 74.)  These JV Transactions are:

- **Iconix Canada**.  Plaintiffs allege that in June 2013, JV counterparty Buffalo International and its subsidiary ("BII") paid half of the $17.8 million purchase price for the Iconix Canada JV, with the remaining $8.9 million due in annual installments over the next three years.  (*Id.*)  Plaintiffs claim that in May 2014, Iconix renegotiated the deadline for one of BII's installment payments in exchange for BII's agreement to delay its right to receive certain royalty credits from Iconix until 2016.  (*Id.* ¶ 236.)  In June 2017, Iconix allegedly repurchased the Iconix Canada JV, whereby all outstanding installment payments owed by BII were deducted from the repurchase price.  (*Id.* ¶¶ 74, 413.)

- **Iconix Middle East and North Africa ("MENA")**.  Plaintiffs allege that in December 2014, JV counterparty Global Brands Group ("GBG") purchased a 50% interest in the Iconix MENA JV for $18.8 million, paying $6.3 million upon the closing of the transaction with the remaining $12.5 million due over the next two

years.  (*Id.* ¶ 210.)  Plaintiffs admit that GBG paid its $12.5 million installment obligations in full.  (*Id.* ¶ 78.)

- **Iconix Southeast ("SE") Asia**.  Plaintiffs allege that in June 2014, GBG purchased a 50% interest in Iconix SE Asia for $15.9 million, paying $3.9 million at closing with the remaining balance due in installments over three years.  (*Id.* ¶¶ 74, 171.)  As amended and expanded in September 2014 to include certain brands in respect of China, Hong Kong, Macau and Taiwan, GBG purchased a 50% interest for $21.5 million, paying $4.3 million upon closing with the remaining $17.2 million balance due in annual installments over four years.  (*Id.* ¶¶ 71, 200.)  Plaintiffs allege that in December 2015, after GBG had made $6.5 million in installment payments, the Company repurchased the Iconix SE Asia JV for a total of $24.7 million, while offsetting the remaining $9.4 million in outstanding installment payments owed by GBG from the purchase price that Iconix paid.  (*Id.* ¶ 71.)

- **Iconix Israel**.  Plaintiffs allege that in November 2013, JV counterparty MGS Sports Trading Ltd. ("MGS") purchased a 50% interest in the Iconix Israel JV for approximately $3.3 million, paying $1.0 million upon closing with an additional $2.3 million due over the next three years.  (*Id.* ¶ 173.)  MGS allegedly paid $2.1 million of the $2.3 million in total installment obligations before the parties amended the JV agreement and the Company gained control.  (*Id.* ¶¶ 79, 415.)

- **LC Partners ("LCP")**.  Plaintiffs allege that in March 2014, JV counterparty Rise Partners purchased a 50% interest in the LCP JV for $4.0 million, paying $800,000 at closing with the remaining balance due in installments over the next four years.  (*Id.* ¶¶ 72, 74.)  Rise Partners made its first installment payment in March 2015, and Iconix allegedly later repurchased the LCP JV, at which time Rise Partners paid the remaining $2 million in outstanding installment payments owed.  (*Id.* ¶¶ 72, 74.)

As the Court recognized in its decision, all of the material terms regarding these JV Transactions were disclosed to investors in Iconix's public filings during the Class Period, including the existence of the installment payment structures described above.  *In re Iconix*, 2017 WL 4898228, at *5, *18; (Def. MTD at 9-11.  Significantly, Plaintiffs now allege that beginning in December 2014 and continuing throughout the Class Period, Iconix engaged in a "public back-and-forth with the SEC" regarding the details of the JV Transactions and the Company's decision not to consolidate them under ASC 810.  (*See* SAC ¶ 95; *see also id.* ¶¶ 229-236, 395.) Plaintiffs expressly rely upon numerous letters from Iconix to the SEC (*see, e.g., id.* ¶¶ 73, 241, 244, 423; Musoff Exs. B-G) throughout which the Company disclosed all of the details of the JV

Transactions to BDO and the SEC during the Class Period, and reiterated its belief that its accounting decisions, including its decision not to consolidate the joint ventures that Plaintiffs now challenge, were proper and compliant with GAAP.  (*Id.* ¶¶ 95-96.)  The Company also stated in the SEC letters that its accounting analysis had been "'reviewed by BDO USA, LLP, the Company's independent audit firm, including its National Office, and they agree with the accounting considerations and conclusions expressed herein.'"  (*See, e.g.*, *id.* ¶ 427.)

## ARGUMENT

## THE SAC SHOULD BE DISMISSED WITH PREJUDICE[5]

I. **PLAINTIFFS FAIL TO ALLEGE A STRONG INFERENCE OF SCIENTER**

A. **Plaintiffs Still Fail To Allege "Conscious Misbehavior Or Recklessness" Or "Motive And Opportunity" As To Any Defendant**

Plaintiffs have failed to remedy any of the shortcomings of their previous complaint.  *See In re Iconix*, 2017 WL 4898228, at *17-19.  As this Court emphasized in dismissing Plaintiffs' previous claims predicated on Iconix's Restatements, Plaintiffs failed to plead "particularized facts showing that Defendants actually knew that they were engaged in improper accounting practices," and emphasized that the CAC "cite[d] no internal reports, documents, or communications that shed light on Defendants['] knowledge of or conduct concerning the Company's accounting practices," nor did it "contain statements of confidential witnesses addressing these issues."  *Id.* at *18; *see also In re DNTW Chartered Accountants Sec. Litig.*, 172 F. Supp. 3d 675, 688-90 (S.D.N.Y. 2016), *aff'd*, 666 F. App'x 78 (2d Cir. 2016).  The Court also recognized that "[a] restatement is simply a correction, after the fact, of an accounting or other

---

[5]  As the Court is well versed in the pleading standards applicable to this Motion, which are set forth in the Court's previous decision, they are not repeated here.  *In re Iconix*, 2017 WL 4898228, at *12-14.

error in financial results.  The fact of an error, even a large error, does not suggest knowledge or intent to misstate when the financial results were originally published." *In re Iconix*, 2017 WL 4898228, at *17 (quoting *In re Turquoise Hill Res. Ltd. Sec. Litig.*, No. 13 Civ. 8846 (LGS), 2014 WL 7176187, at *7 (S.D.N.Y. Dec. 16, 2014)).

Plaintiffs once again fail to allege any particularized facts that the Defendants knew, or were reckless in not knowing, that the complex accounting judgments underlying the Company's financial reporting during the Class Period were improper at the time they were made.  Indeed, Plaintiffs continue to fail to cite a single internal report, document or confidential witness statement evincing that any Defendant (much less all of them) knew that the challenged accounting decisions were incorrect at the time of the Company's challenged disclosures.  *See City of Omaha, Neb. Civilian Emps.' Ret. Sys. v. CBS Corp.*, 679 F.3d 64, 69 (2d Cir. 2012) ("[W]e conclude that plaintiffs here have at most pleaded defendants' failure to comply with Generally Accepted Accounting Principles, rather than their commission of securities fraud . . . ."); *see also Thomas v. Shiloh Indus., Inc.*, No. 15-cv-7449 (KMW), 2017 WL 1102664 (S.D.N.Y. Mar. 23, 2017) (dismissing securities fraud claims despite allegations regarding the magnitude of the accounting error inflating net income and an internal investigation allegedly initiated to cover-up the fraudulent scheme); Tr. of Mot. Hr'g, *Kinzler v. First NBC Bank Holding Co.*, No. 2:16-cv-04243-KDE-JVM (E.D. La. April 27, 2017), ECF No. 114.

In a decision that was recently affirmed by the Second Circuit, Judge Forrest held that plaintiffs had not alleged scienter regarding defendants' alleged accounting errors, which resulted in the defendant company restating certain financial results, notwithstanding alleged confidential witness statements from five former employees.  *Wyche v. Advanced Drainage Sys., Inc.*, No. 15 Civ. 5955 (KPF), 2017 WL 971805, at *14-15 (S.D.N.Y. Mar. 10, 2017), *aff'd*, No.

17-743-cv, 2017 WL 4570663 (2d Cir. Oct. 13, 2017).  Plaintiffs' allegations are even more

inadequate here, as Plaintiffs have not mustered a single confidential witness allegation or

document in support of their claims.  *See City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs.*

*Grp., Inc.*, No. 10 Civ. 2835(NRB), 2011 WL 4357368, at *1 (S.D.N.Y. Sept. 19, 2011)

(dismissing complaint where "plaintiffs d[id] not rely on a single confidential witness or internal

document").

The SAC also continues to fail to plead any particularized facts regarding Defendants'

alleged "motive and opportunity" to commit fraud.  In dismissing the CAC, the Court rejected

Plaintiffs' allegations that Defendants were motivated (1) by a general desire to increase their

performance-based compensation, or (2) to inflate Iconix's stock price so that just three of the

seven Individual Defendants could allegedly profit from personal stock sales.  *In re Iconix*, 2017

WL 4898228, at *14-17.  The Court held not only that there was "nothing unusual" about certain

of the challenged stock sales, but also that Defendants Cole and Blumberg's personal net

holdings of Iconix stock actually increased over the Class Period — a fact that was "'wholly

inconsistent with fraudulent intent.'"  *Id.* at *16 (quoting *In re Bristol-Myers Squibb Sec. Litig.*,

312 F. Supp. 2d 549, 561 (S.D.N.Y. 2004)).  Plaintiffs do not even attempt to bolster their

already-rejected "motive and opportunity" allegations and fail altogether to address the Court's

conclusion that certain Individual Defendants' increased holdings undermines an inference of

fraud.  Accordingly, Plaintiffs' allegations should be rejected for the same reasons set forth in the

Court's prior decision.[6]

---

[6]  The Court also determined that any inference of scienter is undermined by the fact that "the
Company took steps to correct the errors, including by forming a special committee of the
independent directors," *id.* at *19 — a conclusion that Plaintiffs' SAC does nothing to address,
let alone refute.  *See* Opinion and Order at 20, *Fries v. N. Oil & Gas, Inc.*, No. 16 Civ. 6543 (ER)

**B.    Plaintiffs' New Allegations Are Insufficient To
Give Rise To A Strong Inference Of Defendants' Scienter**

Unable to rectify any of the above deficiencies, Plaintiffs have instead asserted new allegations regarding (1) BDO's purported attempt to "conspire" with Defendants to defraud Iconix investors and the SEC, and (2) the details of the challenged JV Transactions, which Plaintiffs allege were set forth in public correspondence between Iconix and the SEC during the Class Period and reveal the JV Transactions to be "sham transactions." (*Supra* pp. 7-9.) As set forth below, far from strengthening Plaintiffs' claims, these new allegations underscore why this action should be dismissed with prejudice.

**1.    Plaintiffs' New Allegations Regarding BDO Are Insufficient**

First, in response to the Court's ruling that any possible inference of scienter was undermined by the fact that Iconix's challenged accounting decisions were reviewed and approved by its independent auditor, BDO, Plaintiffs have now added BDO as a defendant, claiming without support that BDO conspired with Defendants. (*See* SAC ¶ 9.) These allegations are devoid of any supporting facts and should be rejected. Indeed, Plaintiffs do not offer any plausible reason why BDO would agree to commit such acts. While Plaintiffs suggest that BDO was motivated to commit fraud because it received compensation from Iconix for professional services rendered (*id.* ¶ 406), this alone is wholly insufficient to establish a "cogent and compelling" inference of scienter as to BDO, much less Defendants themselves. *In re China Organic Sec. Litig.*, No. 11 Civ. 8623(JMF), 2013 WL 5434637, at *9 (S.D.N.Y. Sept. 30, 2013). Indeed, if such allegations were sufficient, then virtually every independent auditor could be accused of fraud based solely on the fact that it charged clients for its services. Unsurprisingly,

_____

(S.D.N.Y. Jan 11, 2018), ECF No. 48; *City of Brockton Ret. Sys.*, 2014 WL 4832321, at *24.

that is not the law.  *In re DNTW Chartered Accountants Sec. Litig.*, 96 F. Supp. 3d 155, 164-65 (S.D.N.Y. 2015) ("Plaintiffs have cited no authority for the proposition that fees from a significant audit client are sufficient to establish an auditor's motive to commit securities fraud.").[7]

Plaintiffs also attempt to rely on extensive correspondence between Iconix and the SEC beginning in December 2014, with which BDO allegedly assisted (SAC ¶ 426).  But far from supporting an inference of fraud, this correspondence serves only to undermine Plaintiffs' claims because it reflects BDO's understanding of, and continued agreement with, the JV accounting decisions made by Iconix during the Class Period, as well as Iconix's own strongly held views that its accounting decisions were proper.  Just as significantly, these letters refute any suggestion that BDO or the SEC were not provided with all of the material information regarding the JV Transactions during the Class Period.  *In re Iconix*, 2017 WL 4898228, at *5, *18.  As this Court previously recognized, the CAC "contain[ed] no particularized allegations suggesting that Defendants gave Iconix's auditors incomplete information or prevented the auditors from detecting the allegedly 'basic' accounting errors."  *Id.* at *19.  Far from rectifying those deficiencies, Plaintiffs' new allegations do not (and cannot) establish that Defendants withheld any of the details of the JV Transactions from BDO.  To the contrary, they establish that BDO continued to agree with the Company's decision not to consolidate the JV Transactions throughout the Class Period.  (*Supra* p. 9.)  This completely undermines Plaintiffs' attempt to

---

[7]  Indeed, Plaintiffs readily admit that BDO is "one of the largest audit firms in the world" and "a variable interest entity ('VIE') expert."  (SAC ¶ 405.)  Yet the SAC fails to provide any logical reason why BDO would risk its business and reputation by "conspir[ing]" to aid Defendants in committing fraud.  *See In re Philip Serv. Corp. Sec. Litig.*, 383 F. Supp. 2d 463, 470 (S.D.N.Y. 2004) (declining "to infer fraudulent intent merely from [auditor's] desire to keep a client").

13

plead a strong inference of Defendants' scienter.  *See In re Iconix*, 2017 WL 4898228, at *18.[8]

## 2. Plaintiffs' New Allegations Regarding The JV Transactions Are Insufficient

Equally without merit are Plaintiffs' new allegations that the JV Transactions were "sham transactions designed to generate instant 'paper' revenues so that the Company could conceal its worsening financial state."  (SAC ¶ 5.)  The SAC is devoid of any particularized facts to support this assertion.  To the contrary, as addressed above, Plaintiffs' new allegations highlight the fact that the details of the JV Transactions were fully disclosed to BDO and the SEC, and evince Iconix's strongly held belief throughout the Class Period that its accounting judgments were correct when made.  *See Bd. of Trs. of City of Ft. Lauderdale Gen. Emps.' Ret. Sys. v. Mechel OAO*, 811 F. Supp. 2d 853, 869-70 (S.D.N.Y. 2011) ("The fact that a defendant's belief or opinion later prove[s] to be wrong in hindsight does not render the statements untrue when made."), *aff'd sub nom. Frederick v. Mechel OAO*, 475 F. App'x 353 (2d Cir. 2012) (alteration in original).  Additionally, these letters underscore that all of the relevant details of these transactions, including the existence of installment payments by Iconix's JV partners, were publicly disclosed to investors in the Company's public filings throughout the Class Period, thus undercutting any inference of fraudulent intent on the part of Defendants.  *In re Iconix*, 2017 WL 4898228, at *18 (Iconix's disclosure of the accounting decisions at issue undermined an inference of scienter); *Mechel OAO*, 811 F. Supp. 2d at 881 (dismissing where "there are no

---

[8]  The Company's letters to the SEC also reflect that BDO was far from Iconix's "rubber stamp" on accounting issues — to the contrary, when BDO ultimately disagreed with the Company on a particular issue, those views were made known to the SEC.  (*See, e.g.*, Ex. C at 18 ("Despite the above analysis describing why the Company believes that the liquidated damages provision/ obligation does not represent a commitment of the type contemplated by ASC 845-10-25-10, the Company has been advised by [BDO] that they do not concur with the Company on this interpretation.").)

indications that [defendant] was trying to conceal conduct it believed to be illegal").

In any event, as the Company explained in its correspondence with the SEC, "[t]he joint venture partners are highly sophisticated parties that have attempted to obtain the best terms possible from the Company in our negotiations."  (Ex. G at 5.)  At base, Plaintiffs' new allegations boil down to mere disagreement with the negotiated terms of the JV agreements Iconix reached — a far cry from particularized evidence of fraud.

### (a)    Control Over The JVs

For example, Plaintiffs claim that the JV entities lacked sufficient independence, and thus should have been consolidated under ASC 810, because Defendants knew that Iconix maintained control over them "from inception."  (SAC ¶ 67.)  But this unsupported allegation is belied by the SEC correspondence, in which Iconix explained: "We cannot control or significantly influence our partners, as they are either independently owned by private third parties (e.g., Buffalo International, MGS Sports Trading, Pacific Brands) or are publicly traded corporations (e.g., Reliance, GBG)."  (Ex. F at 3.)  The Company also explained that each joint venture counterparty owned a 50% interest in the newly formed entity "at inception with equal rights — neither party has greater rights than the other" — and thus Iconix "cannot unilaterally control the international joint ventures, as all significant decisions and activities related to the operations of the joint venture require unanimous approval by either the *joint venture's* board of directors or equity holders (*i.e.*, *both* the Company and the partner)."  (Ex. G at 3.)

Plaintiffs cannot dispute these facts or, even more importantly, allege any facts to show that Defendants did not believe them to be true during the Class Period.

### (b)    Ability To Repay

Plaintiffs also allege that Defendants "knew that many of its joint venture partners were either unable or unwilling to pay the amount they supposedly owed."  (SAC ¶ 9.)  Again, this is

contradicted by the Company's correspondence with the SEC, in which Iconix stated: "In

determining that the collectability of the notes receivable is reasonably assured, we considered

the financial health of the obligor in terms of the strength of its cash flows, its credit history, and

the likelihood of default."  (Ex. D at 8.)  Further, Iconix explained that "the obligors are large

companies with exemplary credit profiles."  (Ex. B at 5.)  For example:

- GBG, the Company's partner in the Iconix Southeast Asia and Iconix MENA ventures, "is a Hong Kong Exchange listed company with over $3 billion in revenues that is one of the world's leading branded apparel, footwear, fashion accessories and related lifestyle product companies."  (Ex. F at 7; *see also* Ex. C at 23.)

- Iconix's partner in the Iconix Canada venture, BII, is a well-established company with "extensive experience working in the apparel industry" and "over 3,000 points of distribution for the [Buffalo] brand, including 20 branded, standalone stores."  (Ex. C at 3.)

- Iconix's partner in the Iconix Israel venture, MGS, "is the largest wholesale apparel company in Israel" and "one of Israel's leading companies in sports and fashion" with "over 1,500 employees and [] over 70 retail stores, including Mega Sport, the largest sports chain in Israel."  (Ex. C at 5.)

Given the high profile and well-established nature of Iconix's counterparties, Plaintiffs'

unsupported assertion that Defendants knew these counterparties were "unable" to pay Iconix for

their share of the JV Transactions lacks merit and provides no inference of fraudulent intent.[9]

While the SAC also attempts to fault Iconix for receiving "only a fraction of the multi-

million dollar purchase price at closing" for each JV Transaction, with the remainder due in

regular installment payments (SAC ¶ 64), Plaintiffs do not provide any explanation as to why

---

[9]  For the same reason, Plaintiffs' unsupported allegation that Iconix "had not conducted any due diligence on the joint venture partners to confirm that they were 'well-capitalized'" (SAC ¶ 97) is without merit.  Indeed, not only were these counterparties clearly well-established, but Iconix also had previous business relationships with a number of them.  (*See, e.g.*, Ex. C at 5 ("[p]rior to the formation of the Company's joint venture in Israel, a relationship existed between MGS and Iconix"); *see also id.* at 6 (describing existing relationship with GBG).)

this payment structure should be construed as evidence of fraud.  As Iconix explained in its September 2015 letter to the SEC, "[t]he purchase price in the applicable transaction agreements was bifurcated between a closing payment [] and future Installment Payments of the remaining balance on pre-determined dates.  This is similar to typical installment payment arrangements in merger and acquisition transactions."  (Ex. G at 5.)  Significantly, the details of these payment structures were fully disclosed to investors in the Company's public filings, which were reviewed by BDO during the Class Period.  (Def. MTD 8-11, 22); *see also In re Bristol-Myers Squibb*, 312 F. Supp. 2d at 570 (dismissing claim based on restatements where the accounting was "approved by the Company's independent auditors and, more importantly, each sale was explicitly and contemporaneously disclosed, making the Company's reporting for these items transparent").

Moreover, as Plaintiffs are forced to acknowledge, Iconix in fact collected all of the purchase price amounts owed (or set them off against other payment obligations the Company had) on the JV Transactions they now challenge.  For example, Plaintiffs concede that Iconix received the entire $18.8 million owed in connection with its Iconix MENA transaction with counterparty GBG (*supra* pp. 7-8), fatally undermining any claim that GBG's payment obligations were "wholly illusory and fictitious" or that Defendants knew GBG was "unable or unwilling to pay the amount [it] supposedly owed."  (*See* SAC ¶¶ 7, 9.)  Moreover, Plaintiffs admit that Iconix bought out its joint venture partners in the remaining JV Transactions and the final purchase price was reduced by the amount of installment payments then outstanding.  (*Supra* pp. 7-8; SAC ¶¶ 413, 415.)  As a result, Iconix received full credit for the negotiated purchase price as to each of these JV Transactions, and thus Plaintiffs' allegations in this regard

are without merit.[10]

### (c)    Recourse For Missed Payments

Finally, Plaintiffs complain that Iconix never sued its Iconix Canada partner, BII, based on BII's alleged failure to make an installment payment under the original terms of the parties' agreement.  (SAC ¶ 69.)  According to Plaintiffs, Iconix's failure to bring suit against this counterparty is evidence that Defendants knowingly failed to consolidate the JV entity in violation of GAAP.  (*See, e.g.*, *id.* ¶ 111.)  This attenuated argument makes little sense.  Rather, Iconix conducted an arm's-length negotiation with BII and agreed to extend the deadline for one of BII's installment payments in exchange for BII's agreement to delay seeking certain royalty credits from Iconix.  (*Id.* ¶ 236.)  Indeed, Plaintiffs acknowledge that Iconix received this "consideration" from BII.  (*Id.*)  Thus, Plaintiffs' *ex post facto* criticism that Iconix apparently should have sued BII rather than obtain a favorable concession through negotiation lacks all merit and does not come close to supporting the claim that Iconix Canada was a "sham transaction."

### (d)    Deconsolidation Of The JVs

Finally, Plaintiffs claim that when Iconix announced the Second Restatement in February 2016, it assured investors that it "would be able to 'deconsolidate' [the JV] entities and re-recognize the reversed gains – creating the impression that the restatement was merely a timing issue, and not fraud."  (SAC ¶ 11; *see also id.* ¶ 80.)  Plaintiffs further allege that Iconix

---

[10]  In fact, in its correspondence with the SEC, Iconix disclosed that it bought out its Iconix China and Iconix Latin America JVs and that in both transactions, the Company realized a <u>gain</u> on the value of its equity investment.  (Ex. G at 13-14.)  While Plaintiffs point to certain alleged "put" and "call" options available to the JV parties as "indicative of economic disproportionality between the two partners" (SAC ¶ 77), Plaintiffs admit that "the Company publicly disclosed these features" (*id.*) — thus giving rise to a strong inference of <u>non</u>-fraud.

ultimately did not recognize the majority of these gains "notwithstanding the Company's assertions that it would ultimately be able to record [them]." (*Id.* ¶ 11)  These allegations are belied by the very disclosure upon which Plaintiffs rely, which makes clear that Iconix never assured investors that it would be able to re-recognize all of the reversed gains upon "deconsolidation":

> Consolidation of the joint ventures referred to above, and the resulting gain reversal, relate principally to joint ventures in which a portion of the purchase price payable by the Company's joint venture partner for its interest was payable in installments following closing.  The installment payments result in these joint ventures meeting the definition of a variable interest entity (VIE) and the Company being the primary beneficiary of the VIEs.  At the time such payment obligation matures and is satisfied there would be a "reconsideration event" under the VIE rules, which, **depending on the facts and circumstances that exist at that time**, **may** result in deconsolidation of the joint venture and the recognition of a gain at such time (**which may be different than the amounts reversed**).

(Iconix 8-K § 4.02, ECF No. 104-12 (emphasis added).)  Accordingly, Plaintiffs' suggestion that Iconix misled investors into believing "that it would ultimately be able to record" the full gains for these JV Transactions upon reconsideration (SAC ¶ 11) is plainly contradicted by the Company's public filing itself, and Plaintiffs' mischaracterizations do not come close to establishing a strong inference that Defendants knew Iconix's accounting was improper.

## II.     PLAINTIFFS STILL FAIL TO PLEAD THAT MANY OF THE ALLEGED MISSTATEMENTS ARE MATERIALLY FALSE AND MISLEADING

The complex accounting decisions Plaintiffs now challenge are matters of opinion for which Plaintiffs do not, and cannot, plead subjective falsity.  As the Supreme Court has clarified, where allegedly false and misleading statements are expressions of opinion or belief, a plaintiff must also plead facts that, if true, would be sufficient to show that either "the speaker did not hold the belief she professed" or "the supporting fact[s] she supplied were untrue." *Omnicare*, 135 S. Ct. at 1325-28; *see also Tongue v. Sanofi*, 816 F.3d 199, 209 (2d Cir. 2016); *Querub v. Hong Kong*, 649 F. App'x 55, 58, at *3 (2d Cir. 2016) (summary order) (holding that audit

reports are matters of "opinion" that involve "considerable subjective judgment").  "Unlike with statements of pure fact, it is of no importance that a 'sincere statement' of opinion or belief 'turn[s] out to be wrong,'" and thus "[w]here the speaker's opinion or belief is genuine, a bare allegation that her opinion or belief ultimately proved incorrect is not enough to survive a motion to dismiss after *Omnicare*."  *In re Weight Watchers Int'l, Inc. Sec. Litig.*, No. 14-cv-1997 (LAK), 2016 WL 2757760, at *5 n.43 (S.D.N.Y. May 11, 2016).  Meeting the *Omnicare* standard "is no small task for an investor."  *In re Seadrill Ltd. Sec. Litig.*, No. 14 Civ. 9642 (LGS), 2016 WL 3461311, at *8 (S.D.N.Y. June 20, 2016) (citation omitted).  Plaintiffs have failed to meet that task here.

While Plaintiffs allege that the Company failed to consolidate joint ventures under ASC 810 (SAC ¶¶ 332-333), this accounting standard involves highly complex and subjective accounting decisions — as evidenced by the Company's lengthy and detailed correspondence with the SEC described above.  (*Supra* pp. 8-9); s*ee also* Arie S. Wilgenburg, Professional Accounting Fellow, Office of the Chief Accountant, U.S. Securities and Exchange Commission, Remarks before the 2009 AICPA National Conference on Current SEC and PCAOB Developments (Dec. 7, 2009) (stating that there is no "bright-line" criteria for assessing whether a company should consolidate variable interest entities and the "analysis for a particular set of facts and circumstances still requires reasonable judgment")[11]; Ernst & Young LLP, *Consolidation and the Variable Interest Model* (Sept. 2014) (the "Variable Interest Model is complex, and knowing when and how to apply it can be challenging").[12]

---

[11] *Available at*: http://www.sec.gov/news/speech/2009/spch120709asw.htm.

[12]  *Available at*: http://www.ey.com/Publication/vwLUAssetsAL/FinancialReporting Developments_BB1905_VariableInterestEntities_23November2015/$FILE/FinancialReportingD

Plaintiffs do not plead any particularized facts to show that Defendants did not subjectively believe the accuracy of the Company's judgments underlying any of the challenged disclosures.  To the contrary, the purported evidence on which Plaintiffs rely evinces just the opposite — *i.e.*, that Defendants staunchly believed that Iconix's accounting decisions were proper.  (*Supra* p. 9.)  Accordingly, Plaintiffs' claims should be dismissed.  *See Wyche*, 2017 WL 971805, at *16-17 ("More plausible an inference from any misstep by Deloitte is that the proper application of GAAP to the Company's finances was no easy task, even for a party with significant knowledge and expertise."); *In re Seadrill*, 2016 WL 3461311, at *13 ("Despite Plaintiffs' arguments, the more compelling inference is that Defendants were reacting to an uncertain and rapidly changing environment and attempting to understand the implications"); Tr. of Mot. Hr'g, *Kinzler v. First NBC Bank Holding Co.*, No. 2:16-cv-04243-KDE-JVM (E.D. La. April 27, 2017), ECF No. 114 (dismissing securities claims arising out of company's restatements based on the ruling that, *inter alia*, the challenged accounting decisions were governed by *Omnicare*).

Additionally, for the reasons set forth in Defendants' previous motion to dismiss, many of the statements Plaintiffs challenge constitute non-actionable corporate "puffery" upon which no reasonable investor would rely as a matter of law.  (Def. MTD at 39-40); *Barrett v. PJT Partners Inc.*, No. 16-CV-2841 (VEC), 2017 WL 3995606, at *5 (S.D.N.Y. Sept. 8, 2017).[13]

---

evelopments_BB1905_VariableInterestEntities_November2015.pdf.

[13]  Moreover, the SAC continues to rely upon impermissible group pleading with respect to all "Defendants," and none of the Individual Defendants may be held liable for statements not directly attributable to them, including statements regarding any of the JV Transactions entered into before an Individual Defendant joined Iconix (*see, e.g.*, SAC ¶ 36) or after an Individual Defendant left the Company.  *See Janus Capital Grp., Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 2305 (2011); *Pac. Inv. Mgmt. Co. LLC v. Mayer Brown LLP*, 603 F.3d 144, 155 (2d Cir. 2010); *see also Cortina v. Anavex Life Sciences Corp.*, No. 15-CV-10162 (JMF), 2016 WL

III.   **PLAINTIFFS STILL FAIL TO PLEAD LOSS**
       **CAUSATION FOR MANY OF THE ALLEGED MISSTATEMENTS**

Many of Plaintiffs' claims should be dismissed for the separate and independent reason

that the SAC fails to adequately allege loss causation.  In fraud-on-the-market cases such as this

(*see* SAC ¶¶ 466-468), "an inflated purchase price will not itself constitute or proximately cause

the relevant economic loss." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (2005).  Rather, a

plaintiff must plead facts demonstrating that "the misstatement or omission concealed something

from the market that, when disclosed, negatively affected the value of the security." *Lentell v.*

*Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005).[14]  Here, Plaintiffs fail to allege a causal

connection between many of the alleged misstatements and the claimed economic loss.

A.   **Plaintiffs Do Not Plead Loss Causation**
     **For The 2011 and 2012 Financial Statements**

First, while Plaintiffs allege numerous false statements regarding the Company's

financial statements for fiscal years 2011 and 2012 (SAC ¶¶ 126-149), they do not allege a

corrective disclosure with respect to these statements that caused a loss to investors.  To the

contrary, the First Restatement addressed only "'the Company's financial statements for the

years ended December 31, 2013, and 2014, and its financial statements for each of the interim

periods ended March 31, 2014, June 30, 2014, September 30, 2014, March 31, 2015 and June 30,

---

7480415, at *8 (S.D.N.Y. Dec. 29, 2016) (finding no scienter with respect to individual
defendants when events purportedly supporting plaintiffs' "conscious-misbehavior" allegations
took place when individual defendants were not at the company).

[14] Typically, loss causation is pled by alleging a corrective disclosure — *i.e.*, a statement that
served "to reveal to the market the falsity of prior recommendations" — followed by a drop in
stock price. *Lentell*, 396 F.3d at 175 & n.4.  However, "[i]n order to qualify as a corrective
disclosure, the statements at issue must 'reveal to the market the falsity of the prior
recommendations.'" *Alaska Laborer Emp'r Ret. Fund v. Scholastic Corp.*, No. 07 Civ.
7402(GBD), 2010 WL 3910211, at *6 (S.D.N.Y. Sept. 30, 2010) (quoting *In re Omnicom Grp.,*
*Inc. Sec. Litig.*, 597 F.3d 501, 511 (2d Cir. 2010)).

2015.'"  (Def. MTD at 42; *see id.* at 13-14.)  It was not until the Second Restatement that the Company reported that it would restate its financial statements for the years ended 2011 and 2012.  (SAC ¶¶ 112-113.)  Importantly however, that occurred on February 18, 2016,  and Plaintiffs do not allege any stock decline resulting from the announcement (which was after the end of the Class Period).  Consequently, Plaintiffs have failed to allege a "corrective disclosure" with respect to these alleged misstatements and these claims should be dismissed.  *See Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*, 543 F. App'x 72, 77 (2d Cir. 2013) (summary order) (affirming dismissal where plaintiff failed to allege stock decline related to alleged corrective disclosure); *Prime Mover Capital Partners L.P. v. Elixir Gaming Techs., Inc.*, 898 F. Supp. 2d 673, 686 (S.D.N.Y. 2012), *aff'd*, 548 F. App'x 16 (2d Cir. 2013).[15]

**B.      Plaintiffs Do Not Allege Loss Causation
         With Respect To Certain Accounting Issues**

For the same reasons, Plaintiffs have not alleged loss causation with respect to the specific accounting issues addressed by the Company's Second Restatement on February 18, 2016 or in the Form 10-K dated March 30, 2016 — namely, Iconix's alleged "(i) failure to consolidate certain joint ventures; (ii) accounting for trademarks; (iii) mischaracterization of reported gains; and (iv) failure to disclose related party transactions."  (SAC ¶ 321.)  Again, these disclosures occurred after the end of the alleged Class Period and Plaintiffs do not allege any decline in the price of the Company's stock in reaction to them.

Plaintiffs try to remedy this flaw by alleging that the Company issued a press release on August 10, 2015, stating that it was "'currently in a comment letter process'" with the SEC

---

[15]  Even if Plaintiffs could plead that the Second Restatement caused a decline in stock price (and they cannot), a "stock drop [that] occurred after the close of the class period . . . cannot be relied upon for loss causation."  *Masters v. GlaxoSmithKline*, 271 F. App'x 46, 51 (2d Cir. 2008).

regarding "'the accounting treatment for the formation of the Company's international joint ventures,'" and that "'[i]f consolidation of the joint ventures is required, these gains [reported by the Company] would be reversed.'"  (*Id.* ¶ 285.)  This announcement, however, simply informed investors that the SEC and Iconix were in discussions regarding "'whether such joint ventures should <u>potentially</u> have been consolidated in the Company's historical results'" while reiterating that the Company stood behind its accounting judgments (*id.* (emphasis added)) — it did not state that Iconix's financial reporting was incorrect or in any way "reveal to the market the falsity of the prior recommendations."  *Lentell*, 396 F.3d at 175 n.4.  If anything, a reasonable investor could draw the opposite conclusion: that the SEC had not come to any conclusion and was still assessing the circumstances.  *In re Lions Gate Entm't Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 14 (S.D.N.Y. 2016) ("[P]laintiffs have not pleaded how the knowledge of a preliminary SEC staff investigation . . . would have significantly altered an investor's total mix of information.").[16]

Plaintiffs also may not rely on analyst commentaries or Internet posts appearing on the *Seeking Alpha* website (*see, e.g.*, SAC ¶¶ 84-91), which relied on already publicly available information regarding the Company's accounting, for purposes of loss causation.  *See Fed. Home Loan*, 543 F. App'x at 75; *Fila v. Pingtan Marine Enter. Ltd.*, 195 F. Supp. 3d 489, 497 (S.D.N.Y. 2016) (*Seeking Alpha* article not corrective disclosure as it was merely a "negative journalistic characterization of previously disclosed facts"); *In re Blue Earth, Inc. Sec. Class Action Litig.*, No. CV 14-08263-DSF (JEMx), 2015 WL 12001274, at *2 (C.D. Cal. Nov. 3,

---

[16]   Indeed, some courts have held that "the mere announcement of an investigation is not enough to establish loss causation" because it does not reveal to the market that any fraud occurred.  *See, e.g.*, *Loos v. Immersion Corp.*, 762 F.3d 880, 889 (9th Cir. 2014); *Meyer v. Greene*, 710 F.3d 1189, 1201 (11th Cir. 2013) ("[T]he commencement of an SEC investigation, without more, is insufficient to constitute a corrective disclosure for purposes of § 10(b).").  That principle applies with greater force here, where the August 10 announcement did not report anything other than ongoing discussions with the SEC.

2015) (*Seeking Alpha* article was insufficient to allege "corrective disclosure" for loss causation purposes); *Meyer*, 710 F.3d at 1199.  Those reports do not support an inference of fraud. Moreover, the *Off Wall Street* article cited by Plaintiffs (*see* SAC ¶ 16) is not alleged to have been publicly available to investors, and thus cannot constitute a corrective disclosure.  *Prime Mover Capital Partners*, 898 F. Supp. 2d at 686-87, *aff'd*, 548 F. App'x 16.

Finally, despite Plaintiffs' claim that Iconix's stock dropped following the August 10 announcement (SAC ¶¶ 288-289), they readily concede that on that same day, the Company also announced "disappointing financial results for the second quarter of 2015, missing consensus quarterly earnings and revenue expectations by 13% and 14%, respectively," while "dramatically cut[ting] its full-year sales guidance for 2015."  (*Id.* ¶ 287.)  Plaintiffs do not plausibly allege that the price drop related to any announcement regarding the "comment letter process," rather than the other announcements on that day.  *See Wilamowsky v. Take-Two Interactive Software, Inc.*, 818 F. Supp. 2d 744, 757 (S.D.N.Y. 2011).

## IV.   PLAINTIFFS STILL FAIL TO PLEAD CONTROL PERSON LIABILITY

Finally, Plaintiffs' failure to plead a primary violation of Section 10(b) also requires dismissal of the Section 20(a) claim as well.  *See City of Brockton Ret. Sys. v. Avon Prods., Inc.*, No. 11 Civ. 4665 (PGG), 2014 WL 4832321, at *33 (S.D.N.Y. Sept. 29, 2014).  Plaintiffs also fail to allege any facts that each Individual Defendant was "in some meaningful sense, a culpable participant in the controlled person's fraud."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the SAC be dismissed with prejudice.

Dated:   New York, New York
         February 2, 2018

Respectfully submitted,

 /s/ Jay B. Kasner
Jay B. Kasner
Scott D. Musoff
Alexander C. Drylewski
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Phone:  (212) 735-3000

*Attorneys for Iconix Brand
Group, Inc. and F. Peter Cuneo*


 /s/ John A. Nathanson
John A. Nathanson
Agnès Dunogué
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York 10022
Phone: (212) 848-4000


*Attorneys for Warren Clamen*


 /s/ Stephen M. Baldini
Stephen M. Baldini
Carolyn Mattus Cornell
M. Christine Slavik
AKIN GUMP STRAUSS
  HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Phone: (212) 872-1000

*Attorneys for David K. Jones*


 /s/ Eric Corngold
Eric Corngold
John N. Orsini
FRIEDMAN KAPLAN
  SEILER & ADELMAN LLP
7 Times Square
New York, New York 10036
Phone: (212) 833-1100


*Attorneys for David Blumberg*


 /s/ Richard A. Rosen
Lorin L. Reisner
Richard A. Rosen
Richard C. Tarlowe
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Phone: (212) 373-3000


*Attorneys for Neil Cole*


 /s/ Brian E. Maas
Brian E. Maas
Andrew J. Ungberg
FRANKFURT KURNIT
  KLEIN & SELZ PC
488 Madison Avenue
New York, New York 10022
Phone: (212) 980-0120

*Attorneys for Jeff Lupinacci*